Ex parte BUSKIRK.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1896.)

No. 142.

1. CONTEMPT OF COURT—JURISDICTION OF FEDERAL COURTS.
    The act of March 2, 1831, now embodied in Rev. St. § 725, is a lim-
    itation on the power of the federal courts to punish for contempt, and
    restricts their jurisdiction to cases of misbehavior of any person in the·
    presence of the court, or so near thereto as to obstruct the administra-
    tion of justice; to misbehavior of any officer of the court in his official.

transactions; and to cases of disobedience or resistance to any lawful writ, process, order, rule, decree, or command of the court.

**2. SAME—VIOLATION OF STIPULATIONS.**

A federal court has no jurisdiction to punish, as a contempt, an act of disobedience to an order which the court intended to make, but which in fact was never entered; or an act which is a violation of a mere oral stipulation made in open court between the attorneys of the parties. Nor can the court make so punishable an act not forbidden by any order or decree at the time it was committed, by afterwards entering a nunc pro tunc order forbidding such act.

**3. PRACTICE IN CIVIL CASES—NUNC PRO TUNC ORDERS.**

The courts may, by nunc pro tunc orders, supply omissions in the record of what was actually done, but which was not entered on the record, by reason of mistake or neglect; but they cannot thereby modify orders previously made, or make an order which they in fact intended to make at a previous time, but did not in fact make, so as to bind the parties as of the date to which the order relates; and especially is this so in matters relating to criminal proceedings.

**4. HABEAS CORPUS—ACTS IN EXCESS OF JURISDICTION—CONTEMPT PROCEEDINGS.**

A federal court may discharge on habeas corpus a person imprisoned for an alleged contempt in committing an act which was not forbidden by any order of the court existing at the time, but which the court afterwards attempted, in excess of its jurisdiction, to forbid as of a prior date, by an order nunc pro tunc.

This was a petition by Uriah B. Buskirk for a writ of habeas corpus.

John A. Hutchinson, for petitioner.

Maynard F. Stiles and E. L. Buttrick, for respondents.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. Uriah B. Buskirk, the petitioner, was one of the defendants to an action of ejectment pending in the circuit court of the United States for the district of West Virginia, in which Henry C. King was plaintiff. The land in controversy was situated in the state of West Virginia, and it was claimed that Buskirk, with one Mullins, was in the possession of a part thereof. King, on the 31st day of May, 1895, tendered his bill on the equity side of said court, in which he charged that Buskirk and Mullins were preparing to cut and remove large quantities of timber from the land in controversy. The court, at Charleston, on the 31st day of May, 1895, ordered that the bill be filed, which was done, and it appears from the record that no further proceedings were had in said matter, of which an entry was made at the time on the court's records, until on the 12th day of June, 1895, at Charleston, when the following order was made, viz.:

"Henry C. King, Complainant, v. U. B. Buskirk et al., Defendants.

"This day came the complainant by his counsel, and presented the affidavit of Maynard F. Stiles, charging the said defendants with a violation of a stipulation heretofore made in this cause, and asked a rule against defendants. And the defendants, by counsel, presented their affidavit in reply thereto, and thereupon the said matter came on to be heard. Whereupon it is ordered that the said affidavits be filed, and that the said matter be continued with leave to each party to file further affidavits, and for complainant, upon reasonable notice to defendants or their counsel, to

renew his motion herein for said rule. And it is further ordered that in the event the complainant decides to renew his application for a rule to show cause why the defendants should not be fined and attached, that before doing so he serve the defendant or his counsel of record with eight days' notice of the time and place of the application."

The next order made in said proceedings was on the 27th day of June, 1895, as follows, viz.:

"Henry C. King, Complainant, v. Uriah B. Buskirk and M. B. Mullins, Defendants. In Equity.

"This cause came on to be heard upon the 20th day of June, 1895, by consent of counsel for the respective parties upon the application and motion of complainant made on the 12th day of June, 1895, for a rule against defendants to show cause why they should not be atached and fined for contempt in violating certain orders and decrees of this court made in this cause, which said order of June 12th is as follows."

Here follows a copy of the order as given above. At the same time a large number of affidavits made by various parties, and having reference to the cutting of timber on said land by defendants, were tendered and filed. They thus became a part of the record, and were considered by the court below, but in the view that we take of this case it will not be necessary for us to again refer to them.

The defendant Buskirk, on the 27th day of June, 1895, appeared, and filed his answer to the motion for a rule, which was in the following words, viz.:

"Plea and Motion of Defendant Buskirk.

"Henry C. King vs. M. B. Mullins et al. In Equity.

"The defendant U. B. Buskirk comes and says that this court ought not to take any further cognizance of the motion and proceedings for an alleged contempt against him upon the following grounds and for the reasons following: First. No order was ever made in said equity case by way of injunction or otherwise against this defendant, which he has in any wise violated. Second. The so-called 'stipulation' on which the affidavit of M. F. Stiles was filed in this cause against the defendant Buskirk was not in writing, never signed, and that the court never made any order thereon. No order exists of record in said cause in relation thereto. Third. The only evidence of any promise, agreement, or stipulation of the purport alleged in the affidavit of M. F. Stiles, filed in this cause, as a foundation for a rule against said Buskirk, is what was stated in open court, as said Buskirk understands, by his counsel and the counsel of the plaintiff, Henry C. King, as to which, and the scope and extent thereof, the said plaintiff's counsel, M. F. Stiles, and his agent, V. A. Wilder, disagree with the counsel of the said Buskirk himself, as shown by the written affidavits filed before this honorable court; so that in fact the basis of the proceedings against the said Buskirk is upon an oral proposition acceded to by all parties, which was never reduced to writing and signed, and depends upon the memory of the persons present at the time the said proposition was made and agreed to in court. Fourth. The proceedings against respondent herein upon said motion for a rule therefore depend, not upon a violation of any order of the court, but upon an alleged violation of a promise or understanding, never reduced to writing, between the parties by their counsel. Fifth. It is respectfully submitted that, in the absence of an order of the court in writing, which must exist as the basis of any action in the proceeding for contempt, it would be wholly unjust and contrary to the rules and practice of a court of equity and to the principles governing proceedings of a criminal nature in the courts of the United States to proceed further with the proceedings herein against the said Buskirk as if he were on trial for an alleged contempt of the orders of the court.

Sixth. It is respectfully objected that no order of injunction ever was in fact granted in said chancery cause; that, while there was a verbal understanding between the counsel before the court, there was in fact no order of injunction granted by the court. Seventh. In the absence of an order of injunction granted by the court, not of record in the cause, according to court's practice in such case, any action of the court so taken would not be a bar to any proper proceeding or any other proceeding which might be jurisdictional. Eighth. According to the law of the land there can be no such thing as a verbal decree or order of injunction as a part of the record of a court of chancery. Ninth. The affidavit filed by the said Buskirk fully and completely exonerates him from any alleged contempt even of any verbal order in said cause, and fully and distinctly explains each and every fact, circumstance, or thing tending to charge him with any violation of the alleged verbal order or understanding. Tenth. The said Buskirk respectfully moves the court to dismiss said proceedings upon the grounds alleged, and also for the reason that no rule has been issued and no issue has been made up, and no steps have been taken properly in the proceedings now pending against him according to the law of the land and the practice of this honorable court, and nothing done herein will be a bar to any future action the court might take according to the regular course."

On the 28th day of June, 1895, the following order was made and entered of record, to-wit:

"In the Circuit Court of the United States for the District of West Virginia, at Charleston, June 3rd, 1895.

"Henry C. King vs. Uriah B. Buskirk and M. B. Mullins. In Equity.

"This day this cause came on to be heard upon the bill of complaint of the said complainant, filed by him on the 31st day of May, praying an injunction to restrain the defendants and each of them from cutting, hauling, selling, or in any manner trafficking in the timber upon the land claimed by the complainant and described in said bill of complaint. The counsel for both complainant and defendants being present in open court, and here agreeing and stipulating that the further hearing of this cause be had at Parkersburg on the 20th day of June, and that meanwhile the said defendants will cut no timber upon the lands described in said bill and the exhibit filed therewith and made part thereof, from the cutting of which the said complainant asks that they be restrained, it is ordered that this motion for an injunction be sent down for hearing at Parkersburg on the 20th of June, and in the meanwhile, and until the further order of this court, the defendants be inhibited and restrained from cutting any timber upon the land claimed by the complainant and set out in his said bill and the exhibit made a part thereof."

This order was prepared on the 28th day of June, and then entered as a nunc pro tunc order. And on the same day, to wit, on the 28th day of June, 1895, the following order was made and entered of record, to wit:

"H. C. King vs. U. B. Buskirk and M. B. Mullins. In Equity.

"This day came the defendants, U. B. Buskirk and M. B. Mullins, and tendered their answer to the plaintiff's bill, and the same is ordered to be filed, to which the complainant replies generally."

On the said 28th day of June the court below awarded the rule against Buskirk, to which he appeared and filed his answer on the same day, which was in substance to the same effect as the answer he had filed the day before to the motion for a rule, and which we do not deem it necessary to again set forth. And at another day, to wit, on the 29th day of June, 1895, the following order was made and entered of record in said cause, viz.:

"Henry C. King vs. Uriah B. Buskirk.

"Upon a rule to show cause why the defendant should not be fined and attached for his contempt in violating an order of injunction heretofore awarded in the cause of Henry C. King against Uriah B. Buskirk and M. B. Mullins. In Equity.

"This cause came on this day to be heard upon the motion of the plaintiff, upon the affidavits filed and the oral testimony taken in said cause on behalf the plaintiff, upon the answer of the defendant filed to the rule in this cause, upon the affidavits of the defendant and others, and the oral testimony taken in said cause on behalf the defendant and in support of said answer, and it appearing to the court that since the order was made in that cause on the 3d day of June, 1895, the defendant has cut down and felled a large number of trees on the land in controversy in the action of ejectment between the plaintiff, Henry C. King, and the defendant, he is adjudged guilty of contempt in violating the order made on the 3d day of June, 1895, in the case of H. C. King v. U. B. Buskirk and M. B. Mullins, pending in this court. It is therefore ordered that the defendant be assessed and fined the sum of three hundred dollars for having violated the order of injunction heretofore issued in the case hereinabove referred to, and that the same be paid into the registry of this court. And it is further ordered that all the costs arising upon the prosecution of this rule for contempt be paid by the said defendant, Buskirk, including attorney's fees, and that he stand committed to the custody of the marshal, to be by him confined in the jail of Wood county until the fine herein assessed is paid and discharged."

On the 15th day of July, 1895, the following order was made in said contempt proceedings, to wit:

"And now on this day the defendant, U. B. Buskirk, appearing in open court, and refusing to pay the fine and costs so assessed against him, it is therefore ordered that he be committed to the jail of Wood county, West Virginia, until he pays the aforesaid fine and costs imposed against him, or until he is otherwise legally discharged from custody. And a copy of this order, delivered to the marshal of this district, shall be his warrant of authority to commit the defendant, U. B. Buskirk, to the jail of Wood county."

Relative to the questions arising on said rule for contempt as to the directions given by the court for the preparation and entering of an order on the 3d day of June, 1895, in pursuance of the stipulations entered into between counsel for the plaintiff and the defendants to said chancery cause, there appears in the record a statement signed by the Hon. J. J. Jackson, the judge who presided during all the time that such proceedings were had, which said statement was filed by him on the 5th day of August, 1895, and which will not be set forth herein, nor considered by us, for the reasons that will be hereafter stated.

On the 16th day of July, 1895, said Buskirk, by counsel, presented to this court his petition, alleging that he was unlawfully deprived and restrained of his liberty by virtue of said orders of the circuit court for the district of West Virginia, and praying a writ of habeas corpus ad subjiciendum, that his said illegal detention and imprisonment might be inquired into; and also praying that a writ of certiorari might be awarded requiring the clerk of said court to certify and send to the circuit court of appeals for the Fourth circuit a transcript of the record of said proceedings in contempt; whereupon it was ordered that said petition be filed in the clerk's office

of this court, and that a rule issue from said office directed to A. D. Garden, marshal of the district of West Virginia, James R. Mehen, his deputy, and to the jailer of Wood county, West Virginia, requiring them and each of them to appear before this court, at Richmond, Virginia, on the first day of the November term thereof, 1895, to show cause, if any they can, why the writ of habeas corpus as prayed for in said petition should not issue. It was further ordered that the writ of certiorari issue as prayed for, and that said Buskirk be allowed to give bail before one of the commissioners of the circuit court of the United States for the district of West Virginia in the sum of $1,000, with good security, conditional that he make his personal appearance before this court on the first day of said November term, 1895, and submit to such order and judgment as this court should then make in the premises. The writ of certiorari was duly issued, and the transcript of the record of said proceedings was made and filed in this court as therein required. Due return was made to said rule by the marshal, his deputy, and the said jailer, by which it appears that said Buskirk had been taken into custody and held by them by virtue of said order of commitment and said judgment of the circuit court of the United States for the district of West Virginia, and that he was then at large under bail in pursuance of the order authorizing it, issued by this court.

That the court below had jurisdiction of the suit in equity from which the proceedings in contempt originated is clear, and is not controverted by the petitioner. But it does not, therefore, necessarily follow that it had jurisdiction of the contempt proceedings. To us it seems equally as clear that the court below, in entertaining said proceedings, acted in excess of its jurisdiction. The authority of the courts of the United States to punish for contempt is defined by section 725, Rev. St., which is a limitation upon the manner in which the power to punish for contempt shall be exercised. The section reads as follows, viz.:

"The said courts shall have the power to impose and administer all necessary oaths, and to punish, by fine or imprisonment at the discretion of the court, contempts of their authority; provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereunto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

This statute evidently limits the power of the courts of the United States—a power inherent in all courts, and required for the preservation of order in their proceedings, and necessary to the enforcement of their judgments—to punish for contempts. The power they at one time had quoad such matters was much greater than that they now have. By the seventeenth section of the judiciary act of 1789 they had power to punish by fine or imprisonment, at the discretion of said courts, "all contempts of authority in any cause or hearing before the same." This power was exercised until the passage of the act of March 2, 1831, entitled "An act declaratory of the law concerning contempts of court," which is now section 725, to

which reference has been made. The supreme court of the United States, in Ex parte Robinson, 19 Wall. 505, 511, in construing this legislation, says:

"It limits the power of these courts in this respect to three classes of cases: (1) Where there has been misbehavior of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; (2) where there has been misbehavior of any officer of the courts in his official transactions; and (3) where there has been disobedience or resistance by any officer, party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the courts. As thus seen, the power of these courts in the punishment of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes."

Testing the record of this case in the court below by the rules so established, it will be found that said court had no jurisdiction of the proceeding against Buskirk for contempt. At the time the same was instituted there had not been issued by the court any writ, process, order, rule, decree, or command in the said chancery cause of King v. Buskirk and Mullins, to which the petitioner had or could have shown any disobedience or resistance whatever, as the record clearly shows. Indeed, the charge as first made seems to recognize this as true, and the affidavit first filed and the order first entered sets up the violation of a "stipulation" made in open court as the foundation of the proceedings for contempt. However reprehensible such conduct on the part of Buskirk may have been,—proceeding upon the theory that the charge was true, which he, however, denied in his answer,—it nevertheless did not constitute a contempt to the court or its orders, and did not authorize any proceedings for a contempt under the provisions of the law as it then existed. A careful examination of the record shows that Buskirk had not been ordered to do or decreed not to do any act or thing in said chancery suit prior to the time he was proceeded against, fined, and committed for contempt. Such being the case, the court had no jurisdiction of said contempt proceedings, and the rule should not have been granted. The court below, it is proper to say, acted upon the theory that the order made by it on the 28th day of June, 1895,— in which it is recited that the court, on the 3d day of June, 1895, directed that in substance a restraining order issue as prayed for by the plaintiff, but which order in fact was not entered, not even prepared,—had the effect, as a nunc pro tunc order, to make valid and binding on the defendants that which the court had intended to do or had ordered done on said 3d day of June. In this, we think, the court below was in error. The rule is now well established that nunc pro tunc orders cannot operate to modify orders theretofore made or to take the place of orders intended to be made but omitted. The courts can by such orders supply omissions in the record of what was actually done in the cause at a former time when it was under consideration, and by mistake or neglect not entered in the clerk's minutes or the court's records; but where the court has omitted to make an order which it could have made, and in fact intended to make, it cannot subsequently make the same nunc pro tunc, so as

to make it binding upon the parties to the suit from the date when it was so intended to have been entered; and especially is this so in matters relating to criminal proceedings and those involving rules for contempt. Hyde v. Curling, 10 Mo. 359; State v. Clark, 18 Mo. 432; 1 Bish. Cr. Proc. § 1160; Bank v. Dudley, 2 Pet. 522; In re Wight, 134 U. S. 136, 10 Sup. Ct. 487; Bullitt Co. v. Washer, 130 U. S. 142, 9 Sup. Ct. 499; Brignardello v. Gray, 1 Wall. 627; Nabers v. Meredith, 67 Ala. 333; In re Limerick, 18 Me. 183; Smith v. Hood, 25 Pa. St. 218. In our opinion, the statement filed by Judge Jackson, to which reference has been made, is not part of the record of the contempt proceedings, and therefore cannot be considered by us on the hearing of this petition. The rule granted by this court on the petition for habeas corpus, as well as its order for the writ of certiorari, was awarded on the 16th day of July, 1895, while the certificate of the judge, relating to the facts concerning the question whether the court directed an order to be prepared and entered on the 3d day of June, 1895, in pursuance of the stipulation entered into by counsel in said chancery cause, was not filed therein until the 5th day of August, 1895. This was some time after the petitioner had been adjudged guilty of contempt, and 20 days after the said proceedings had been directed certified to this court. Surely the proceedings had in said chancery cause, after the rendition of the judgment against petitioner, cannot be used as part of the record to his prejudice, on the hearing of the petition which involves the correctness and validity of that judgment. After a cause has been removed by appeal, writ of error, or certiorari, to this court, it is beyond the control of the court or of any judge thereof from which it was so removed, until it has been duly heard and remitted to the jurisdiction from whence it came.

In the case of Generes v. Bonnemer, 7 Wall. 564, Mr. Justice Miller, delivering the opinion of the court, said:

"To permit the judge to make a statement of the facts on which the case shall be heard here, after the case is removed to this court by the service of the writ of error, or even after it is issued, would place the rights of parties who have judgments of record entirely in the power of the judge, without hearing and without remedy. The statement of facts, filed without consent of the parties, must be treated as a nullity."

See, also. Flanders v. Tweed, 9 Wall. 425; Muller v. Ehlers, 91 U. S. 249.

In the light of recent decisions of the supreme court of the United States, it is no longer an open question that, if the court whose action is complained of had no authority to pass the sentence imposed, the same is therefore void for the reason that the court acted without jurisdiction; and, further, that in such cases the party seeking relief may be discharged on habeas corpus. Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77; In re Coy, 127 U. S. 731, 8 Sup. Ct. 1263; Ex parte Harding, 120 U. S. 782, 7 Sup. Ct. 780; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164; In re Swan, 150 U. S. 637, 14 Sup. Ct. 225. The proceedings of a court which has acted in excess of its jurisdiction, are void,—as much so as are the proceedings of a court which has acted without jurisdiction. In either case its order of commit-

ment is a nullity, and the party prejudiced may be discharged upon a writ of habeas corpus. Ex parte Reed, 100 U. S. 13; Ex parte Clarke, Id. 399; Ex parte Rowland, 104 U. S. 604; Ex parte Curtis, 106 U. S. 371, 1 Sup. Ct. 381; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724; Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935. This in no wise conflicts with the well established and universally recognized rule that the writ of habeas corpus cannot be made to serve the purpose of an appeal or writ of error. Ex parte Watkins, 3 Pet. 191; Ex parte Parks, 93 U. S. 18; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152; In re Swan, supra. In cases where no writ of error lies, or where an appeal is not permitted, and the petitioner is in custody under a void judgment, an appellate court, or any judge thereof, may award the writ of habeas corpus, and the party should be discharged. Ex parte Parks, supra; Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517; In re Tyler, 149 U. S. 180, 13 Sup. Ct. 785. There can be no question as to the power of this court to issue the writ of habeas corpus, and of its duty, in cases like the one we now consider, to do so. Ex parte Yerger, 8 Wall. 95; In re Boyd, 1 C. C. A. 156, 49 Fed. 48, and 4 U. S. App. 73; Act March 3, 1891 (26 Stat. 829, § 12).

It follows from what we have said that the judgment for contempt rendered against the petitioner is void, that he should be discharged from the commitment by virtue of which he is held, and that the writ of habeas corpus should issue; and it is so ordered.