WILLIAM M. SILVERMAN, Trustee in Bankruptcy of L. P. HOL-LANDER & Co., INC., Judgment Creditor, *v.* SENECA REALTY COMPANY, etc., and Another, Judgment Debtors.

Supreme Court, New York County, November 20, 1934.

*Kraus, Leman & Parker* [*Jack Lewis Kraus, II*, of counsel], for the plaintiff and judgment creditor, for the motion.

*White & Case* [*A. Hayne de Yampert* of counsel], for the respondents Glen W. Thomas, Henry Vogt and Robert W. Dowling.

*Palmer & Serles*, for the respondents Palmer and Huck, in opposition.

LAUER, J. This is a motion to punish Henry Vogt, Glen W. Thomas, Robert Dowling, Albert R. Palmer and William Huck, Jr., for contempt of court. The plaintiff herein, trustee in bankruptcy of L. P. Hollander & Co., Inc., sought to recover from the defendants the sum of $75,000, together with interest, which sum represented the bankrupt's deposit on a lease. After trial the jury found a verdict for the plaintiff against both defendants in the sum of $84,320. An examination of the minutes of the trial discloses that immediately after the rendition of the verdict the following conversation took place between William Huck, Jr., trial counsel for the defendant Seneca Realty Company, Jack Lewis Kraus, II, attorney for the plaintiff, and the court: " Mr. Huck: Now, if your Honor please, I move to set aside the verdict * * *. Will your Honor reserve decision and allow us to submit briefs on that

motion? [Discussion between court and counsel.] The Court: You would be willing to stipulate that nothing will be done to prejudice the plaintiff? Mr. Huck: During the disposition of the motion, certainly. [Further discussion.] The Court: All right, serve whatever you want on the other side on the 18th and submit to me on the 22nd of May. Mr. Huck: And, of course, in the meantime execution will be stayed? The Court: Yes, of course, I will stay the execution until — how much time do you want after the decision? Mr. Huck: I suppose the usual 30 days stay and 60 days to make a case. Mr. Kraus: I don't think so here where they are getting this preliminary delay for one thing, and where their financial condition, as I am informed, is in great danger. The Court: Say 15 days stay after the decision. Mr. Huck: And 60 days to make a case. The Court: Yes, and that is upon the understanding that nothing will be done by the defendants to the prejudice of the plaintiff during the continuance of this stay. Mr. Huck: Yes. (Decision reserved. The court grants to the defendants 15 days' stay of execution and 60 days to make a case after the determination of the motion, upon the understanding that nothing will be done by the defendants to the prejudice of the plaintiff during the continuance of this stay. Briefs to be exchanged on May 18, 1934, and submitted to the Court on May 22, 1934.) ''

It thus appears that the stay of execution asked by the defendants was only granted to them upon their express stipulation and understanding and the court's direction that nothing would be done by defendants to plaintiff's prejudice during the continuation of the stay.

In court at the time of the granting of the stay were Henry Vogt, secretary, treasurer and a director of the defendant Seneca Realty Company, Glen W. Thomas, assistant secretary and assistant treasurer of the defendant Seneca Realty Company, and William Huck, Jr., trial counsel for the defendant Seneca Realty Company. During the trial Robert W. Dowling, vice-president and director of the Seneca Realty Company, and Albert R. Palmer, a partner in the firm of attorneys of record representing the Seneca Realty Company, attended and were present in court.

It is the plaintiff's contention that the persons sought to be punished by reason of their conduct as hereinafter set forth, enabled and permitted the Starrett Corporation, the owner of all the stock of the defendant Seneca Realty Company, to obtain every asset of its wholly owned subsidiary against which the plaintiff in this action might have proceeded for satisfaction of its judgment at the expiration of the period of stay.

The facts to which the plaintiff points in support of this application are these: On May 10, 1934, the Starrett Corporation instituted

suit against the defendant herein, Seneca Realty Company, in the Hudson County Circuit Court in the county of Hudson, State of New Jersey. Among the directors and/or officers of the Starrett Corporation at that time were Robert W. Dowling, Glen W. Thomas and Henry Vogt, all officers and directors of the Seneca Realty Company. The action was predicated upon an alleged promissory note dated April 25, 1932, in the sum of $3,778,000, and was made by the Starrett Investing Corporation, which was the prior name of the defendant Seneca Realty Company. The note was signed by Henry Vogt, treasurer, and Glen W. Thomas, assistant treasurer. Service in the action was effected on May 10, 1934, upon Henry Vogt, at 77 River street, Hoboken, N. J., the address of the office of the Starrett Corporation and the nominal office of the defendant Seneca Realty Company. The complaint was verified by Robert W. Dowling. On May 22, 1934, a default judgment was entered and levy immediately made upon the assets of the Seneca Realty Company, all of which assets were in the State of New Jersey. The execution sale ensued on May 29, 1934, at which time all of the defendant Seneca Realty Company's assets were disposed of to the Starrett Corporation for the sum of $10,000, which sum was also taken by the Starrett Corporation and applied on its judgment.

During the time between the granting and the expiration of the stay neither the plaintiff or his attorney nor the court had any advice or information of what was transpiring in New Jersey in regard to the property and assets of the defendant the Seneca Realty Company. As a matter of fact, Glen W. Thomas signed an affidavit on May 18, 1934, in furtherance of the defendant's endeavor to secure a new trial and this affidavit was served with defendant's brief upon the plaintiff and submitted to this court without making any mention of the New Jersey action, which had at that time been initiated. Defendants' motion for a new trial was denied on May 28, 1934, and judgment was entered on May 31, 1934, for $84,503.70. Thereafter, and as late as June 20, 1934, defendant's attorneys served a notice of appeal. No undertaking was filed on the appeal. Plaintiff's execution was returned unsatisfied. Upon the examination in supplementary proceedings, the defendant Seneca Realty Company was found by the plaintiff to be without assets. During the examination knowledge of the facts regarding the suit instituted in New Jersey by the Starrett Corporation was obtained by the plaintiff.

It is the plaintiff's theory that the persons sought to be punished, through their conduct respectively and/or jointly enabled and permitted the foregoing events to occur, deceived the court and defeated, impaired, impeded and prejudiced the plaintiff's right

to proceed and consequently should be adjudged in contempt and punished accordingly.

The court's right to punish for contempt existed at common law. (*People ex rel. Munsell* v. *Court of Oyer & Terminer*, 101 N. Y. 245, 249.) This right is based upon the inherent necessity of the court's possessing such a summary power (Thomas, Problems of Contempt of Court, chap. 1), and is preserved to the court by section 753 of the Judiciary Law. The portions of section 753 of the Judiciary Law which are relevant here are:

" § 753. Contempts punishable civilly. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in either of the following cases:

" 1. An attorney, counsellor, clerk, sheriff, coroner, or other person, in any manner duly selected or appointed to perform a judicial or ministerial service, for a misbehavior in his office or trust, or for a wilful neglect or violation of duty therein; or for disobedience to a lawful mandate of the court, or of a judge thereof, or of an officer authorized to perform the duties of such a judge.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

" 3. A party to the action or special proceeding, an attorney, counsellor, or other person, for the non-payment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum; or for any other disobedience to a lawful mandate of the court."

Inasmuch as the exercise of the power to punish for contempt by the court may result in imprisonment without trial by jury, the statute should be strictly construed. (*Fromme* v. *Gray*, 14 Misc. 592; affd., 148 N. Y. 695.) However, it is well settled that when any of these provisions are violated, regardless of the particular form which the act may take, it may be regarded as a civil contempt if it defeats, impairs, impedes or prejudices the rights of one of the parties. It matters not that the case is novel or unusual. If it is within the principle, it is immaterial that no precedent can be cited for it. (*Dollard* v. *Koronsky*, 67 Misc. 90.)

The question is then presented whether what transpired upon the granting of the stay can be said to constitute a " lawful mandate " within the meaning of the provisions of section 753 of the Judiciary Law, above quoted. It is claimed that a mandate must be a formal written order of the court. With this contention I do not agree. The case of *Matter of People ex rel. Donnelly* v. *Miller* (213 App. Div. 88) is cited as authority for this proposition. That

case is clearly distinguishable on the facts from the instant case. Although it seems to indicate that a " lawful mandate " is a written direction of the court, that question was not directly involved, inasmuch as the record before the court failed to disclose any lawful mandate of any kind, whether written or oral, which had been willfully violated. I feel that such indication is merely dictum and not determinative of the facts in the instant case.

The word " mandate " is defined in Webster's New International Dictionary as " An authoritative command; order; injunction." This definition does not preclude an oral command, order or injunction.

Notice should be taken in this connection of the provision in the General Construction Law, section 28-a, added by chapter 917 of the Laws of 1920, which reads: " ' Mandate ' includes a writ, process or other written direction, issued pursuant to law, out of a court, or made pursuant to law, by a court, a judge or person acting as a judicial officer, and commanding a court, board or other body, or an officer or other person named or otherwise designated therein, to do or to refrain from doing an act therein specified."

This section of the General Construction Law is pointed to as authority for, the proposition that a lawful mandate can be only a formal written order of the court. Such an interpretation is not warranted. The language of this provision is to be particularly noted. It does not pretend to be a comprehensive definition of the word " mandate." It merely states some things which are to be *included* within the term. It follows, therefore, that it does not exclude other things. In other words, there may be other directions or orders not therein specified which may properly be regarded as mandates.

The provisions of the Judiciary Law relating to contempts are such as were deemed necessary to the effective administration of justice in courts of record. It would seem, therefore, that the word " mandate " is evidently used in the sense of a command or order or direction which the court is authorized to give and which a person is bound to obey. There are many such orders given by a judge on the trial of a cause that are not reduced to writing or directed in writing to the person who is bound to obey them. Such orders are lawful orders and directions of the court, the disobedience of which would tend to embarrass or defeat the administration of justice. It must, therefore, follow that " this provision of the statute referring to mandates must be given such a construction as would enable the judges in the performance of their duties to carry on the business of the court without being obliged to reduce to writing, sign and direct every such order or mandate, obedience

to which might be lawfully required." (*People cx rcl. Illingworth* v. *Oyer & Terminer*, 10 App. Div. 25, 29.)

If, in the instant case, the plaintiff had disregarded the directions of the court in regard to the stay of execution and had levied execution prior to the expiration of the period of the stay, such conduct undoubtedly would constitute a contempt of court. If, therefore, the direction of the court was a lawful mandate in so far as the plaintiff was concerned, it would seem to be an absurdity to regard the terms of the stay binding on the defendants in any other light than a lawful mandate. The direction given, in my judgment, was a lawful mandate of the court within the contemplation of section 753 of the Judiciary Law, the violation of which is punishable as a contempt.

Even though it be regarded that the proper construction of section 753 of the Judiciary Law requires a written order, the court's direction in the instant case was placed in writing. The direction was made a part of the minutes taken by the stenographer and is open to no misunderstanding. There is no claim here made that the direction of the court was in any manner misunderstood by any of the persons sought to be punished. Section 28-a of the General Construction Law provides that a " Mandate includes a writ * * * or other written direction * * * made pursuant to law, by a court, * * * and commanding a court * * * or other person * * * to do or to refrain from doing an act therein specified." The direction of the court in the instant case clearly falls within this provision. A direction of the court entered in the court's minutes is a lawful mandate of the court. The Court of Appeals has given recognition to a direction entered in the minutes of the trial as falling within the definition of a " mandate " as that word is used in section 28-a of the General Construction Law (*Matter of Reilly* v. *Berry*, 250 N. Y. 456, 460). In either event, the direction given by the court, whether it be regarded as written or oral, was an order of the court which called for observance and not defiance or evasion. It was an order expressly made to avoid the chicanery and unscrupulous practices which are frequently indulged in by judgment debtors in causing the disappearance of their assets, which could and should be used in the payment of a righteous judgment. It was, in my opinion, an order sufficient to warrant contempt proceedings for its violation.

I come next to the consideration of whether any formal notice of the court's direction must have been given to the parties sought to be punished herein, or whether actual knowledge of it is sufficient to subject the violator of the court's direction to contempt proceedings. In my opinion the latter is sufficient. It is well settled

that where one, knowing that the court has decided to restrain certain acts, commits the prohibited acts before the order of the court is formally made or served, such acts are in contempt of court because the mandate of the court is disobeyed, even though the usual formalities had not yet been complied with. (*Dollard* v. *Koronsky, supra.*) This principle was early recognized in the case of *Hearn* v. *Tenant* (14 Ves. Jr. 136), in a proceeding to punish for contempt, where Lord ELDON said: "If these parties by their attendance in Court were apprised, that there was an Order, that is sufficient; and I cannot attend to a distinction so thin, as that persons, standing here until the moment the Lord Chancellor is about to pronounce the Order, which from all, that passed, they must know will be pronounced, can by getting out of the Hall at this instant avoid all the consequences."

If, therefore, the parties sought to be adjudged in contempt had knowledge of the court's order, by such knowledge they became responsible to the court for their conduct.

The issue is raised that the defendants in the action were corporations and that the court's order was directed at the defendants. Such an excuse or defense by the parties sought to be punished is unavailing. It is elementary that corporations act through their officers and agents. The officers of the defendant Seneca Realty Company are responsible for their acts when they, as officers, permit deceit to be practiced on this court in order to obtain and continue a stay for the Seneca Realty Company, or when they, as officers of the Starrett Corporation, arrange through the means of a judgment obtained by default against the defendant Seneca Realty Company to denude this defendant of all its assets and take them into the possession of the Starrett Corporation, which owned all the stock of the defendant Seneca Realty Company. It would follow, therefore, that if these officers of the Seneca Realty Company, or any of them, willfully and knowingly violated the lawful mandate of this court, they cannot claim immunity by hiding behind the corporate fiction. Too often the corporate veil is used in an endeavor to obscure sharp practices.

The Seneca Realty Company is now in bankruptcy. It is urged that because of the Seneca Realty Company's large indebtedness and the fact that the plaintiff might have been forced to come in as a general creditor, he has not been harmed. I do not deem such argument persuasive.

In the case of *Ludwig* v. *Jurist* (187 N. Y. Supp. 325; affd., without opinion, App. Term, First Dept., Mar. 10, 1921, N. Y. L. J. Mar. 11, 1921), where the court, when importuned by the defendant and his lawyer, granted a stay on the representation of

the defendant that the defendant's financial condition would not be impaired, and during the continuation of the stay the defendant filed a voluntary petition in bankruptcy, the court held the defendant in contempt, ruling that it was wholly immaterial what result the filing of the voluntary petition might have on the ultimate collection of the judgment, inasmuch as it was the false representation and assurance which was the gravamen of the offense.

There remains only the question who, if any, of the persons herein sought to be adjudged in contempt committed acts which violated the order of this court.

The court is concerned that its orders and directions are not violated or evaded; that parties who receive the favor of the court on certain conditions observe those conditions and that they act in good faith in abiding by the conditions imposed.

Before passing judgment upon the acts of the persons sought to be punished, I desire a full disclosure of the facts surrounding the circumstances complained about and the particular conduct of each of the persons sought to be adjudged guilty of contempt and of any person who, as an officer or agent of the defendant Seneca Realty Company, or as an attorney and officer of the court, knowingly aided or abetted in a plan to violate or evade the direction of this court in regard to the stay or the condition upon which the stay was granted.

While some facts are made to appear sufficiently clear in the papers submitted, there are others which do not so appear. The matter of punishment for a contempt of court is a serious one and I do not desire to act without a complete knowledge of precisely what occurred. For this reason I wish a full disclosure of all the facts so that I will do no one an injustice. A reference to hear and report on those facts will, therefore, be ordered to one of the official referees of this court.

The question will arise, what damage has been inflicted upon the plaintiff? On examination in supplementary proceedings it appears that Glen W. Thomas exhibited a balance sheet showing that the Seneca Realty Company's assets in December, 1933, were in excess of $7,000,000. It is now claimed that this sum was only the book value. The assets of the defendant Seneca Realty Company were sold at an execution sale under the New Jersey judgment obtained by the Starrett Corporation for the sum of $10,000. Section 773 of the Judiciary Law provides as follows: "Amount of fine. If an actual loss or injury has been produced to a party to an action * * * by reason of the misconduct proved against the offender. * * * a fine, sufficient to indemnify the aggrieved party, must be imposed upon the offender, and collected, and paid over to the aggrieved party, under the direction of the court."

Under the terms of section 773 of the Judiciary Law (*supra*), the power exists to fine the violators of the court's direction the full amount of the judgment obtained by the plaintiff. Since there seems to be a question as to the value of the assets of the Seneca Realty Company, the official referee to be appointed will also hear and report on the actual value of the assets of the Seneca Realty Company disposed of on the execution of the Starrett Corporation.

The final determination of this motion and the punishment to be meted out will await the report of the referee.

It follows that this motion will be referred to an official referee, to hear and report on the matters as herein indicated. Settle order of reference on notice.