**BERRY v. MIDTOWN SERVICE CORPORATION et al.**

**No. 307.**

Circuit Court of Appeals, Second Circuit.

May 29, 1939.

108

CLARK, Circuit Judge, dissenting.

Tyson & Tyson, of New York City (Harold R. Medina and Frank L. Tyson, both of New York City, of counsel; I. Sidney Worthman, of New York City, on the brief), for appellant.

Kaufman & Weitzner, of New York City (Samuel H. Kaufman, Emil Weitzner, and Harold S. Lynton, all of New York City, of counsel), for appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The present action was brought against Midtown Service Corporation to recover damages for the wrongful death of the plaintiff's husband caused by an accident in an amusement park operated by the defendant. The trial resulted in a judgment for the plaintiff which was entered on June 30, 1938. The defendant was represented by the attorney of its insurance carrier who, after rendition of the verdict,

asked for a stay of execution to allow time to determine whether to appeal. After some discussion between the court and counsel a twenty day stay was granted. During the period of such stay the judgment debtor denuded itself of substantially all its assets by transferring them to various affiliated corporations. Thereafter the plaintiff obtained an order requiring the transferor, the transferees and their several officers, to show cause why they should not be fined as for a civil contempt of court to the extent of the damages sustained by the judgment creditor. The matter was heard by Judge Inch, who had granted the stay, upon supporting and opposing affidavits. He denied the motion, with the statement "On the facts here, the remedy, if any, is not by proceeding to punish for contempt." From the order of denial, the plaintiff has appealed.

Although the appellees strenuously assert that the transactions by which the judgment debtor parted with its assets were not motivated by a purpose to defeat collection of the plaintiff's judgment, we shall assume the contrary for purposes of decision. Thus the question presented is whether a judgment debtor who obtains a stay of execution without giving bond and during such stay makes himself execution proof, commits a contempt of court. The plaintiff lays some stress upon the colloquy which occurred when the stay was granted. At that time her counsel objected to the usual thirty day stay and stated that he had been informed that the defendant was "financially irresponsible." Counsel for the defendant replied that he did not "know about responsibility, but they will be in business for thirty days anyhow. They won't close Luna Park in the summer time." We regard these remarks as no more than a prediction that the defendant would be likely to stay in business for the reason stated. They were not a stipulation made in court that it would do so; although it may well be doubted whether the result would be different if they were so construed. See Ex parte Buskirk, 4 Cir., 72 F. 14. Furthermore, there is no proof that any of the appellees knew of the colloquy, although some of them knew of the judgment, and the judgment debtor at least is chargeable with knowledge of the stay obtained by the attorney representing it upon the trial. Accordingly, we put nothing upon the colloquy and pose the question broadly as stated above.

In terms the stay restrained the judgment creditor only. She contends that by implication it also ordered the judgment debtor to do nothing intended to impair her rights under the judgment; that transfers rendering the debtor execution proof were a violation by it of such implied order and that the transferees aided and abetted in such violation; with the result that all the appellees committed a contempt of court. These contentions find some support in New York cases. Advance Piece Dye Works, Inc. v. Zeller, 150 Misc. 908, 270 N.Y.S. 487; Silverman v. Seneca Realty Co., 154 Misc. 35, 276 N.Y.S. 466; Jedeikin v. Long, 154 Misc. 835, 278 N.Y.S. 464. But such decisions must be read in the light of section 753 of the Judiciary Law (Consol.Laws, c. 30) which defines civil contempts in very broad language. In any event New York cases cannot be controlling upon the federal courts whose power to punish for contempt is limited by a federal statute.

The relevant provisions of the federal statute, now 28 U.S.C.A. § 385, read as follows: "The said courts shall have power * * * to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice * * * and the disobedience or resistance * * * by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts." This section, and the earlier statutes from which it is derived, have been construed to restrict within the limits of the statutory language the contempt powers of the district court. Ex parte Robinson, 19 Wall. 505, 510, 511, 22 L.Ed. 205; Bessette v. W. B. Conkey Co., 194 U.S. 324, 326, 24 S.Ct. 665, 48 L.Ed. 997; In re Probst, 2 Cir., 205 F. 512.

It is plain that the conduct complained of as a contempt in the case at bar is not misbehavior in the presence of the court "or so near thereto as to obstruct the administration of justice." It is true that the wilful removal beyond reach of the court of the subject matter of a pending suit or its destruction pending an appeal

may constitute a contempt. Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Merrimack River Savings Bank v. Clay Center, 219 U.S. 527, 31 S.Ct. 295, 55 L. Ed. 320, Ann.Cas.1912A, 513; United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, 8 Ann.Cas. 265; Clay v. Waters, 8 Cir., 178 F. 385. But decisions such as these do not control the case at bar, since the present action was not concerned with any specific property; nor would an appeal be defeated or impaired by the judgment debtor's transfer of its assets after rendition of the money judgment. Hence contempt, if contempt there be, must turn on the final clause of the statute.

As already noted the stay of execution contained no express order or command directed to the judgment debtor. In the case of In re Probst, 2 Cir., 205 F. 512, this court dealt with an analogous situation. There Probst, against whom an involuntary petition in bankruptcy had been filed, obtained from the bankruptcy court an order staying prosecution of an action which was pending against him in the City Court. In applying for the stay Probst stated that he was in possession of all the assets listed in his bankruptcy schedules and was holding them subject to the orders of the court. During the period of the stay he disposed of some of these assets and used the proceeds thereof for living expenses. Upon these facts the creditors applied to the bankruptcy court for an order adjudging him to be in contempt. The district judge so held and imposed a fine, which this court reversed, saying, 205 F. at page 513: " * * * Our attention has been called to no writ, process, order, rule, decree, or command of the court which he has disobeyed. * * * This may be a highly technical ruling; but where Congress has been so industrious to restrict the natural inherent powers of a federal court, scrupulous attention to the limitations it has imposed would seem to be the proper course."

Whether a different result might not have been reached on the theory that the bankrupt's assets were within the custody of the court and his conduct amounted to a removal of the subject matter of the litigation pending before it, we need not say. Cf. Clay v. Waters, 8 Cir., 178 F. 385. However that may be, the Probst case stands as an authority for the proposition that the granting of a stay of prosecution at the request of the defendant does not impliedly order him to refrain from disposing of his assets during the pendency of the stay. We can see no basis for distinction between a stay of prosecution and a stay of execution after judgment in respect to the matter under consideration. Other federal cases show an equal insistence that a party must have violated an express court order before he can be punished for contempt under the final clause of section 385. Ex parte Buskirk, 4 Cir., 72 F. 14; Dakota Corp. v. Slope County, 8 Cir., 75 F.2d 584; Morgan v. United States, 8 Cir., 95 F.2d 830.

The only federal case to which our attention has been called that gives support to the plaintiff is Judge Van Fleet's decision in Lineker v. Dillon, 275 F. 460, D.C. N.D.Cal. There, during a stay of execution the judgment debtor, with the assistance of the officers of two banks, converted her tangible assets into cash and left the state, taking the money with her. The banks and their officers who had knowingly aided in putting the property beyond reach of the judgment creditor were held guilty of contempt, and one of the grounds upon which this result was reached was stated as follows (275 F. page 470):

" * * * This stay order was not a matter of right in the defendants, but was purely discretionary with the court and intended only to maintain the rights of the parties in statu quo pending steps for a new trial or appeal as they might be advised. Both parties were charged as matter of law with a knowledge of this purpose, and that neither was rightfully at liberty during the existence of the order to take any steps intended to impair the rights of the other under the judgment; and these things were as plainly implied from this order as though written into it in express terms.

"When, therefore, the respondents undertook to render this judgment nugatory and valueless by lending their aid to remove the only tangible property of the judgment debtor beyond the reach of process, they were as guilty of violating the court's order as though it had forbidden their acts in positive terms, and under well-established principles their acts constituted a contempt of the court. Courts do not sit for the idle ceremony of

making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. These courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with. Nor is this power in any wise limited by section 268, Judicial Code (Comp.St. § 1245 [28 U.S.C.A. § 385]). * * *"

■■■ Despite our respect for the views of Judge Van Fleet, we are unable to agree with his opinion that a stay directed to one party can be expanded by implication into an order upon the other. The authorities he cites do not extend so far. Before a person should be subject to punishment for violating a command of the court, the order should inform him in definite terms as to the duties thereby imposed upon him. Once we adopt the principle that an express order to one party carries implications of duties imposed upon the other, it would be difficult to set limits upon the doctrine. We believe it is a wiser policy to punish as contempt only the disobedience of some express command; and such we understand to be the general rule. In Doe dem. Cardigan v. Bywater, 7 C.B. 794, where an action of ejectment was stayed by consent and the plaintiff was ordered to execute a lease to the defendant, it was held that the defendant was not guilty of contempt of court in refusing to accept the tendered lease, and that the plaintiff should be relegated to a suit for specific performance. Similarly, in cases such as the one at bar the judgment creditor's remedy for the wrong done him should be to upset the fraudulent transfers rather than to prosecute for a contempt of court. The issues raised are more suitable for trial in a plenary suit than by the summary mode of contempt procedure. Moreover, if a fraudulent conveyance made during the pendency of an action like the one at bar but prior to entry of judgment is not a contempt of court, and no one has ever suggested that it is, it is difficult to find any good reason for treating the conveyance as a contempt merely because made after judgment and execution stayed at the debtor's request. The stay is intended to leave the litigation temporarily in statu quo, that is, as if no judgment had yet been rendered. For the foregoing reasons we think Judge Inch was right in holding that contempt proceedings were not the appropriate remedy.

CLARK, Circuit Judge (dissenting).

I can agree with all that is said in the opinion as to the necessity of some "order" or "command" of the court to afford a basis for contempt proceedings, and yet still question the result and believe the case should be returned for full findings of fact as to the nature and extent of the property transfers by the judgment debtor. That there was a definite command of the court seems admitted by all; the sole question is whether it binds only the plaintiff to stay further proceedings or binds also the defendant to maintain the status quo. No formal order was entered, and hence the nature of the command must be deduced from the colloquy of counsel and the court. That colloquy was not limited to the statements quoted in the opinion. After the verdict defendant's counsel asked for a stay; plaintiff's counsel objected to a long stay; and the court said, "We usually give them thirty days and sixty days to make a case." Then plaintiff's counsel said not only that he had been informed that "this defendant is financially irresponsible and has but $5,000 insurance," but also, "If that is a fact I wonder if they can put up any bond." And he continued: "I want to know so as to look into that situation immediately. It seems to me that if they are financially responsible they can put up a bond in ten days as well as in thirty days." In response to the court's inquiry, "How about it?" to defendant's counsel, the latter then made the statement quoted in the opinion, that "they will be in business for thirty days anyhow. They won't close Luna Park in the summer time." Plaintiff's counsel said, "If they can put up a bond they can put it up in ten days"; his opponent replied, "Not ten days"; and the court said, "I will make it twenty—twenty days' stay and sixty days to make it a case."

It seems to me that the action of the court in granting a shorter stay than usual shows its intent and purpose to afford protection to the plaintiff without causing undue hardship to the debtor in producing a bond. I doubt if many debtors would dare read this colloquy as permitting all manner of property transfers by them during the extra ten days granted for the produc-

tion of a suitable bond, or that that is its natural interpretation. I agree with Judge Van Fleet in the passage quoted (Lineker v. Dillon, D.C.N.D.Cal., 275 F. 460, at page 470) that "these things were as plainly implied from this order as though written into it in express terms," and that "courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." At any rate, hereafter in like circumstances, counsel will be well advised to see to it that they and the court speak the few extra words which, I believe, were in the minds of all.