### GLUCK v. CAMDEN FIRE INS. ASS'N et al.

No. 257, Docket 22674.

United States Court of Appeals Second Circuit.

Argued April 9, 1953.

Decided May 11, 1953.

Nathan Weidenbaum, New York City (Isidore Krein, New York City, on the brief), for appellants.

Sidney S. Korzenik, New York City, for appellee.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

While the addition to this litigation of various parties representing conflicting interests gives an appearance of complexity, the underlying question before us is relatively narrow and simple. It is whether or not a court order requiring the holding of a fund intact excludes, under the circumstances here, the possibility of state court attachments obtained in other litigation by one of the parties before the district court. A part of the relief sought alternatively is that the attaching party and his counsel be adjudged in contempt of court. We have jurisdiction at this time because the order refused an injunction against the proceedings in the state court and, in fact, dissolved a stay to that effect contained in the show-cause order granted on the motion. 28 U.S.C. § 1292.

The original action was by Eugene Gluck as plaintiff against The Camden Fire Insurance Association as defendant, seeking recovery on the latter's policy of theft insurance for two motor trucks alleged to have been stolen by one Sam Wiederhorn. It was instituted in the Supreme Court of New York on September 24, 1951. Defendant removed it to the district court and then brought in as third-party defendants Wiederhorn himself, the two moving parties here, Al's Tire Shop, Inc., and its president, Alfred Unger, who, as used car dealers, had acquired possession of the trucks and sold them, and finally the two purchasers of the trucks (who have no present significance here). The trucks were acquired and sold by the moving defendants in 1948 and 1949 and were claimed by plaintiff in 1950. During the

course of settlement negotiations in 1950, Wiederhorn deposited $3,000 in escrow with Rein, Mound & Cotton, attorneys for defendant insurance company. But since plaintiff's claim for the two trucks was $15,000, defendant brought in the various third-party defendants against the contingency that it might ultimately be forced to pay. The escrow agreement had been extended to June 1, 1952, but at that time would expire. So these impleaded defendants, Al's Tire Shop and Unger, on May 27, 1952, procured from Judge Conger an order to show cause why they should not have a warrant of attachment upon the escrow deposit to secure their contingent claim against Wiederhorn. This order contains the stay upon which the present proceedings depend.

This part of the order called for service upon Wiederhorn through his attorney, and upon Rein, Mound & Cotton, attorneys for the defendant insurance company, and provided that until further order of the court the escrow deposit should be held intact. It is quoted in full in the note.[1] The motion for the attachment was adjourned so that it was not passed upon until July 9, 1952; and the order was not entered until August 13, 1952. Meanwhile plaintiff, suing Wiederhorn in the New York Supreme Court on another and distinct claim, procured a warrant of attachment against the fund; and before the August 13 order was entered, another action by plaintiff's nominee on yet another claim, together with this claim, had gone to judgment in the state court. These judgments have called forth subpoenas in supplementary proceedings, and further action appears imminent. In his decision of July 9, 1952, Judge Edelstein granted the attachment to the two moving parties here, but, notwithstanding protests as to the state court attachment then extant, refused to declare it invalid, saying it was not in issue and in his later order providing that nothing therein should be construed to impair such validity or priority as the state court attachment "may presently have" against the attachment he was ordering.[2] Later the parties agreed on a payment from the fund to Wiederhorn's counsel for services, so that it now stands at $2,500.

The present proceeding is upon a motion that Messrs. Rein, Mound & Cotton turn over the fund to the United States marshal subject only to the movants' attachment and free of all state attachments or alternatively that plaintiff cancel all state proceedings against the fund or further that he and his counsel be held in contempt of court. On this Judge Irving R. Kaufman on November 20, 1952, granted an order to show cause, together with a temporary stay against interim action in the state proceedings. Thereafter Judge Sugarman made the order appealed from, denying the motion in its affirmative demands (although allowing deposit of the fund in court for the convenience of the parties). In a short memorandum he said: "The priority of liens and the propriety of attachments and orders supplementary to judgment were all before Judge Edelstein. His order, indicating that third-party defendants' (Al's Tire Shop, Inc. and Unger) attachment was to be subordinate to plain-

1. "Sufficient reason appearing therefor,
"Let, service of a copy of this order, together with the affidavit annexed thereto, be made upon the defendant, Sam Wiederhorn, by service thereof upon George J. Hart, Esq., his attorney, and upon Rein, Mound & Cotton, Esqs., attorneys for defendant and third-party plaintiff, The Camden Fire Insurance Association, be made on or before the 28th day of May, 1952, at 11:00 A.M. o'clock, which service so made shall be deemed sufficient, and in the meantime, and until the further order of this Court, said escrow deposit in the hands of Rein, Mound & Cotton, Esqs., shall be held intact."

2. "Ordered, that nothing herein shall be construed to impair such validity or priority as the warrant of attachment which issued out of the Supreme Court of New York on the application of Eugene Gluck in his separate cause of action against Sam Wiederhorn may presently have as against the warrant of attachment to follow hereunder; and that any and all rights of all parties herein and of Eugene Gluck as an independent suitor in the New York Supreme Court are reserved to them with respect to any and all issues as may hereafter be raised in any contest elsewhere between the two attachments referred to herein."

tiff's and Suss' established the law of the case." (Suss was plaintiff's nominee in the second state action.) The judge added that one district judge was bound to follow another judge's rulings in the same case involving the same issues.

It would seem probable that Judge Sugarman has interpreted Judge Edelstein's rulings somewhat more broadly than the latter intended, and there was no intent to pass finally upon the validity of the state attachments. Nevertheless the essential point that they did not violate orders of the district court is made clear. And in any event we are not bound by any prior ruling of a district judge as the "law of the case," as plaintiff claims. United States v. Wissahickon Tool Works, 2 Cir., 200 F.2d 936, 940; Frost v. Bankers Commercial Corp., 2 Cir., 194 F.2d 505, 508. Nevertheless we agree with Judge Edelstein's interpretation of the prior order.

This brings us to the meaning of Judge Conger's order that the escrow fund must be held intact. Appellants and their counsel argue vehemently that plaintiff has been guilty of sharp practices in getting ahead of them, so to speak; but the district judges have not thought so, nor do we. Appellants, we fear, are incensed because they did not thoroughly foresee what might happen; as is not unusual, hindsight provides them with answers they did not have before. For we think that the possible ambiguity in the order is explained by their own actions. As they point out, they drew the order, chose the language, and presented it to the judge for approval. Semantically it is hardly adequate for their present intent; the fund itself is obviously intact and in the hands of the escrowees, whatever series of notices any courts may have served upon the latter. Thus successive orders of attachment on the same property are not unusual; while issues of priority may arise, none of validity are presented by this simple fact. Heilbronn v. Herzog, 17 App. Div. 416, 45 N.Y.S. 268; Anglo-Continentale Trust Maatschappij (Anglo-Continental Trust Co.) v. Allgemeine Elektricitaets-Gesellschaft (General Electric Co.,

Germany), 171 Misc. 714, 13 N.Y.S.2d 397; Bates v. Days, C.C.W.D.Mo., 17 F. 167; Gumbel v. Pitkin, 124 U.S. 131, 151–157, 8 S.Ct. 379, 31 L.Ed. 374. When it is recalled that the immediate objective on this 27th day of May was to prevent the return of the fund to its original owner on June 1, it can be seen that the words used were apt for their particular purpose. That this is what the framers had in mind is then demonstrated by the notice for which they provided; they arranged for notice of the forthcoming hearing to the owner and the holders, but with no notice to the plaintiff. He was left substantially in the situation of an outside third party. And it would hardly be claimed that some other creditor of Wiederhorn, not here involved, could not sue the latter and attach the fund.

Keeping in mind the natural construction of a writing against the writers —if they wanted this action prohibited, they could so easily have said so explicitly —and considering, as we have held, that a person ought not to be adjudged in contempt of court upon the implications of an order whose provisions are not clear, see Berry v. Midtown Service Corp., 2 Cir., 104 F.2d 107, 122 A.L.R. 1341, certiorari dismissed 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525, we think the result reached below correct. This keeps the fund out of the hands of the debtor, but does not attempt to freeze it for the benefit of any one creditor—and a contingent one at that. Plaintiff attempts to go further and say that under Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, no injunction may issue against state proceedings. But the statute, amended in 1948 to lessen somewhat the effect of the Toucey doctrine, does permit such an injunction by a district court "in aid of its jurisdiction," 28 U.S.C. § 2283; see Reviser's Note to this section. The applicability of this provision depends somewhat on the answer to the main question. If the district court had intended to take exclusive possession of the fund, then it could well have power to stop outside interference from whatever source. This does not therefore furnish a complete answer. But it does have some

186

bearing. Federal judges are now taught by experience to respect state processes in ways unknown to earlier federal generations. Had Judge Conger intended an order which might have suggested a possible clash, it is hardly to be expected that he would have acted thus without seeming premeditation and merely on the basis of a document presented to him by movants' counsel.

In short we see little to justify the construction of the order claimed by appellants and much in favor of that made below. Our affirmance, like Judge Edelstein's original ruling below, should not be taken as a test of the ultimate validity of the state attachments, an issue which has not been before the court below. It is merely a holding that they do not violate Judge Conger's stay.

Order affirmed.