HYDE vs. CURLING & ROBERTSON.

10 | 359
142 | 363
10 | 359
89a | 249

A Court has power to order entries of proceedings, had by the Court at a previous term, to be made *nunc pro tunc.* But where the Court has omitted to make an order which it might, or ought to have made, it can not, at a subsequent term, be made *nunc pro tunc.* In all cases in which an entry *nunc pro tunc* is made, the record should show the facts which authorize the entry.

## ERROR to Marion Circuit Court.

RICHMOND, *for Plaintiff in Error, insists:*

1st. It was erroneous in the Circuit Court to order an enquiry of damages, without first entering a judgment by default against the garnishee, and such a judgment, *nunc pro tunc,* after the assessment, was irregular and void. Rev. S. 476, 140, 814-15; 17 Johns. Rep. 270; Graham's Practice 633-4; 5th Wend. 106; 6th Cowen 599, 600; 1st Monroe 113; 1 Durn. & East. 637-8; Bates vs. Lockwood, Tidd's Practice 965-6-7.

2d. The Court erred in ordering an enquiry of damages on the same day that the *supposed* judgment, by default, was entered up. Evans vs. Bowlin, 9 Mo. R. 407.

3d. It was error in the Court to assess the damages without a jury, as there was no written evidence of indebtedness. Pratte, &c. vs. Coil, 9 Mo. R. 163.

4th. The Court, sitting as a jury, found a verdict *palpably* contrary to the law and evidence in the cause.

5th. The affidavit of plaintiff, and other facts, show that injustice was done to the defendant in the Circuit Court, and a new trial should, therefore, have been granted. Mahan vs. Jane, 2 Bibb 33; do. 287; Haggin vs. Christian, 1st Marshall 579; Dicken vs. Smith, 1st Little 211.

GLOVER & CAMPBELL, *for Defendant in Error.*

Insist on the affirmance of the judgment:—

1st. Because a good and sufficient judgment, by default, was entered by the Court on the 10th August, 1846, immediately before the Court proceeded, by consent of the defendant's attorney, to assess the plaintiffs' damages. The plaintiffs were entitled to judgment by default, at the first term after the filing of the interrogatories served on the defendant. See Rev. C. 1835, p. 79, §22; Graham's S. C. Practice 632. That the plaintiffs did not take their judgment as early as they might, cannot be objected to by the defendant. 6th Mo. R. 322; 7 ib. 4; 7 ib. 569; 1 Mon. R. 55. Or if it was ground of objection he waived it by appearing and consenting to proceed with the trial. 2 M. R. 25; 5 ib. 61. The case of Evans vs. Bowlin, 9 M. R. 410, is not in point here, because the attorney consented to proceed with the case, and dispensed with a jury. That the attorney had the power to bind his client. See 6 John. 300; 1 Bin. 214; 7 Pick. 137; 1 Greenleaf's Ev. 255; 3 Taunton Rep. 485; 1 Salk. 86; ib. 88. But it will also be perceived that no objection was made to entering up the judgment by default, on the 10th August, 1846, nor any attempt to set it aside after it was entered up. See 1st Mo. Rep. 156.

2d. That Wesley W. Hyde was largely indebted to the plaintiffs; that he made arrangements to pay his home debts only; that he put in the hands of his brothers $5000 or $6000; that he

sued the defendant Jordan for over $7000, and dismissed his suit only when he found the plaintiffs were about to recover; that he had received several thousands of dollars from his parents, and settled the same on his child; that he had no visible property, but plenty of money, connected with the fact of total silence, on the part of the defendant, as to the matters of account between Jordan and Wesley, are circumstances fully justifying the verdict. As to the alleged newly discovered evidence, the affidavit was wholly insufficient. 2 New York Dig. p. 145, title "New trial;" 3 Caines R. 182; 2 ib. 185; 18th Johns. 489; 7 Mass. 205; 15 ib. 378; 2 Binney 582; 4 John. 425; see also Graham's Practice 511; 7 Mo. Rep. 25. The evidence which the defendant pretends to have discovered, was, at best, but *cumulative*, and was, therefore, not admissible. It was not competent for the defendant to introduce evidence on the execution of the writ of enquiry. 9 vol. 503.

3d. It would seem to be quite immaterial whether the orders, which the Court made *nunc pro tunc*, were properly taken or not; yet the plaintiffs insist said entries were regular. In 1 Salk 401, the case was a verdict for plaintiff, and the death of defendant before judgment. The Court held that as plaintiff was *entitled* to his judgment, prior to his death, he should have it. See 2 Tidd's Practice 965; 1 Salk 87; 3 Salk 116. Now certainly in this case the plaintiff was entitled to judgment by default, upon the failure of defendant to appear. If so, the entry might properly be made at a subsequent term, because the plaintiffs' interrogatories filed, the law, and the failure of defendant to appear, render it as positively certain that plaintiffs were entitled to their judgment, as if a verdict had been returned into Court. But, in addition to this, the record shows that the orders were really made by the Court, and that defendant had moved to *set aside the default.* 9th Mo. Rep. 410.

McBRIDE, J., *delivered the opinion of the Court.*

On the 25th June, 1844, an execution issued from the clerk's office of the Marion Circuit Court, in favor of Curling and others, and against Wesley W. Hyde, for the sum of $4,396 35, and costs of suit. On this execution, Jordan W. Hyde, appellant, and others, were garnisheed. Interrogatories were filed against the garnishees, on the 16th October, 1844, which were served on them on the 14th Nov., 1844. On the 10th August, 1846, the case being called, Jordan W. Hyde offered to file his answer to the interrogatories exhibited against him, but the Court refused him leave to answer. The Court then, "by consent of parties," proceeded to hear the evidence and assess the damages, and gave a verdict against Jordan W. Hyde for the sum of $5,021 51, and directed judgment to be entered up for the same. On the next day, 11th Aug., the Court, on the motion of the plaintiffs' attorney, ordered a motion to be entered up as of the 13th day of the previous term, and as if made by Jordan W. Hyde, asking the Court to set aside a judgment by default entered against him on that day, and for leave to file his answer to the plaintiffs' interrogatories, which motion was overruled. On the 12th day of August, 1846, the defendant, Jordan W. Hyde, filed his motion to set aside the assessment of damages and for a new trial. On the same day the plaintiff filed his mo-

tion to have a judgment by default entered against the defendant, as of the 13th day of the last term, which was sustained, and a judgment, by default, *nunc pro tunc,* was thereupon entered. On the 13th August, 1846, the defendant moved in arrest of judgment, which motion the Court overruled—the Court also overruled his motion for a new trial. Exceptions were taken to the several decisions of the Circuit Court, and the cause is brought here by writ of error.

The first error assigned, is the assessment of damages by the Court, before a judgment by default had been taken against the garnishee.

This proceeding is founded upon the sixth section of an act to regulate executions, Rev. C. 1845, 476, which provides that "when a *fieri facias* shall be issued, and placed in the hands of an officer for collection, if no sufficient property can be found in the county, whereof to levy the amount due on said writ, it shall be the duty of the officer to summon, in writing, as garnishees, all such debtors of the defendant, as the plaintiff, his agent or attorney, shall direct, to appear in Court on the return day of the *fieri facias,* to answer, on oath, such interrogatories as may be exhibited against him, on the part of the plaintiff, touching his indebtedness to the defendant in the execution; and the like proceedings shall be had, and the like judgment rendered, for or against the garnishee, as are and may be provided in cases of garnishees, summoned in suits originating by attachment."

The act above referred to, is an act to provide for the recovery of debts by attachment, R. C. 132, the twenty-seventh section of which provides for the filing, by the plaintiff, of written allegations and interrogatories against the garnishee, and requires an answer thereto under oath. The twenty-eighth section requires them to be filed within the three first days of the term, if the term shall so long continue, or during the term, and not thereafter, unless for good cause shown. The twenty-ninth section directs the answer of the garnishee to be filed at the same term, unless for good cause shown, &c., and in default, the plaintiff may take his judgment by default against the garnishee, or may, by attachment of his body, compel him to answer. The thirtieth section provides that the judgment, by default, may be proceeded on to final judgment, in like manner as in case of defendants in actions upon contracts.

We are referred in the foregoing section, for the manner of consummating judgments by default, to the general provisions on the subject, which are to be found in the act to regulate practice at law. R. C. 814-15. By the thirty-sixth section of this act, it is provided that if the defendant shall fail to file his plea or other pleadings within the time prescribed by

law, or the rules of practice of the Court, an interlocutory judgment shall be given against him by default. By the forty-first section, where the suit is founded upon any instrument of writing, and the demand is ascertained thereby, the Court shall assess the damages, and final judgment shall be given thereon. The forty-second section provides that "in all other cases of such interlocutory judgment, the damages shall be assessed by a jury, empannelled in the Court for that purpose, and every such enquiry of damages shall be made at the term next after the term in which such interlocutory judgment shall be rendered unless the Court direct it to be made at the same term."

The record shews that Jordan W. Hyde was garnisheed in time for the October term, 1844, and that at that term of the Court interrogatories were filed against him, which he failed to answer; *then* the plaintiff might have taken his judgment by default against him, and an order for an enquiry to assess the damages, returnable to the next term of the Court; but he failed to do so. A period then of near two years elapsed, before any further action is had in the case, when the record presents the Court in the act of assessing the damages, "by consent," whilst Jordan W. Hyde is, in every manner and form, importuning the Court to permit him to answer to the interrogatories, and disclaiming all and every species of indebtedness to the defendant in the execution. From this it would appear that the plaintiff had been very remiss in the prosecution of his action, and that whilst the defendant may have no special claim to the indulgence of the Court, yet the delay which had taken place should have induced the Court to commence and try the case *de novo.*

The Court proceeded to hear parol evidence, there being no written evidence of indebtedness, and assessed the damages against the defendant, Jordan W. Hyde, to the amount of the debt in the execution, to-wit: $5,021 51, and entered final judgment against him. This assessment was perhaps right and legal, if the defendant was present and consented thereto, although the statute appears not to have contemplated the consent of a party who makes default. Consent, however, may be considered as a waiver of an irregularity. But was the final judgment legal, entered as it was before a judgment by default had been taken? To remedy this irregularity, the record shows that on the next day after the assessment of damages, and the rendition of the final judgment, on the motion of the plaintiff, a judgment by default was entered, *nunc pro tunc,* as of the 13th day of the previous term.

No question can exist as to the power of the Court to make *nunc pro tunc* entries, for the furtherance of justice, and thus to place on the re-

cords the action of the Court, had on a former day of the term, or at a previous term, and which the clerk had omitted to enter at the time. This power should, however, be exercised with great caution and circumspection, otherwise it may become the means of great wrong and oppression. But where the Court omit to do that which, by the rules of law and the practice of the Court, it may legally do, it cannot supply such omission at a subsequent term, by making an entry *nunc pro tunc*. And whenever it becomes necessary to make such an entry, the record should show the facts upon which the power is exercised.

In this case, there is an absence of any evidence conducing to show that the judgment by default had actually been ordered, when the plaintiff was by law entitled to it, and that the subsequent order or judgment was made to supply the omission of the clerk, and not that of the Court.

This record exhibits a case of great confusion and inattention—it appears as if it had escaped the attention of the Court and the parties for a period of time sufficient almost to operate a discontinuance; when, therefore, it was resuscitated by the plaintiff, the Court should have put the parties in a condition to assert their rights, without any impediment growing out of the delay which had taken place.

We are not advised, by the record, what reason the defendant assigned for asking the Court to set aside the judgment by default, on his first motion. But it appears to us that the Circuit Court should not be very strict in its requisition, when it is recollected that this is a summary proceeding, for a large sum of money, and if the judgment should be wrong, it would prove ruinous to the defendant.

Wherefore, without investigating the question whether this is not a joint proceeding against the defendant and others, garnisheed at the same time, and the judgment against him irregular, without the record showing what disposition was made of the other defendants, we are of opinion that the judgment rendered in the case is irregular, for the reasons assigned, and that the Court should have permitted the defendant to file an answer, under the circumstances of this case, and that its judgment must be reversed, and the cause remanded.

SCOTT, J., not sitting.