## BULLITT COUNTY *v.* WASHER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 132. Submitted December 18, 1888. — Decided March 11, 1889.

Amendments are discretionary with the court below, and are not reviewable here.

In Kentucky when the record of a County Court, composed of the county judge and a majority of the justices of the peace of the county, shows affirmatively an adjudication of the necessity of a construction contract; an appropriation for preliminary work upon it; the appointment of an agent to make the contract; and the levy of taxes to pay for work done under it, it is not necessary, in order to fix liability on the county, that the record should further show that the contract was reported to the court with the name of the person making it; that it was filed in the court, or that it was accepted by the county judge.

When a body like the county courts of Kentucky has judicial powers, and also large administrative and executive powers, and is by law authorized to employ agents in the execution of the latter branch of powers, the acts of the agents are not in every case required to appear of record.

When a County Court in Kentucky, constituted as the law requires, enters into a construction contract on behalf of the county in the manner prescribed by law, and charges the county with the amount specified therein, its jurisdiction in that special mode of organization ceases; and it is then the legitimate province of the County Court, held by the county judge alone, to superintend and control the erection of the structure.

As a general rule in Kentucky, when any power is conferred or duty imposed by statute upon a County Court, the term is understood to mean a court held by the presiding judge alone, and not in conjunction with the justices, and should be held so to mean, even when used in connection with fiscal matters, if it relates to mere ministerial duties.

IN CONTRACT. Verdict and judgment for the plaintiffs. The defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. D. M. Rodman* and *Mr. Frank P. Straus* for plaintiff in error.

*Mr. Augustus E. Willson* for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

On the 31st of December, 1879, W. T. Washer, Jacob Danenhauer and Peter Baecker commenced an action in the Circuit Court of the United States for the District of Kentucky against Bullitt County in that State, to recover damages for breach of a certain contract made between Washer and the county, and afterwards assigned by Washer to Danenhauer and Baecker, for the construction by Washer of a bridge over Pond Creek, between Bullitt and Jefferson counties.

A demurrer to their original petition having been sustained with leave to amend, the defendants in error, on the 24th of March, 1880, filed an amended petition.

The original and amended petitions substantially aver that the county of Bullitt, by its duly authorized commissioner, entered into a written contract with plaintiff Washer for the erection by him of a bridge across Pond Creek according to specifications, at prices stipulated therein; that in this contract the county guaranteed payment for the entire work; that the County Court of Bullitt County appointed commissioners, and

notified Jefferson County thereof, requesting it to appoint commissioners to contract for the bridge; that beyond the appointment of such commissioners Jefferson County took no action looking to any co-operation of the two in the work; that thereupon, before the contract was made, the County Court, the presiding judge and a majority of the justices of the county being present, decided that it was necessary to erect the bridge, and having exhausted all means provided by statute for securing the aid of Jefferson County in building it, decided to erect it upon the responsibility of Bullitt County alone; that thereafter on the 16th of July, 1877, the Bullitt County Court, composed as aforesaid, authorized its commissioner, J. W. Ridgway, to report any bids that might be offered, and the amount of the same, and authorized the county judge, W. Carpenter, to receive bids, and to accept or reject the same; that in pursuance of that order the county judge accepted the bid of Washer; that thereafter Ridgway, being thereunto authorized by an order of the County Court, made and entered into the contract with Washer for the construction of the bridge, which contract was afterwards ratified by the County Court, composed as aforesaid, and said court, by an order duly entered of record, directed the levy of taxes to pay for the work done under the contract, and the application of the money raised to the payment of the contractors; that Washer commenced work under that contract, and proceeded with it until he and his assignees were notified by the county to stop work upon the bridge; and that the defendant had failed to perform its contract, and to pay for work done thereunder, to the damage of plaintiffs in the sum of $5325.14, for which sum they prayed judgment.

A demurrer to this amended petition was sustained by the Circuit Court, but upon writ of error from this court the judgment was reversed and the case remanded. *Washer* v. *Bullitt County*, 110 U. S. 558. The question raised by the pleadings in that case was, whether Bullitt County had, under the statutes of Kentucky, authority to make the contract sued on, by which, according to the averments of the declaration, it undertook, at its own cost, to build across a boundary stream a bridge, one end of which was in another county.

This court held that the power given by the Kentucky statutes to adjoining counties to construct bridges across boundary streams at joint expense did not take away the common law right of each of the counties to construct such bridges at its sole cost.

It also held, in effect, that the allegations of the petition and amended petition, being admitted to be true by the demurrer, the contract sued on must be held to have been made under that section of the statutes which confers upon the County Court jurisdiction to erect public buildings, bridges and other structures, and not under the section providing for the joint action of contiguous counties, as was contended on behalf of the plaintiff in error; and that therefore the averments of the petition disclosed a right of action in the plaintiffs.

Upon the return of the case to the Circuit Court, Bullitt County filed an answer specifically denying the truth of every material allegation of the petition and amended petition, the chief and controlling defence being that the contract sued on was not the contract of Bullitt County. As a part of its answer the county filed a complete transcript of the orders of its County Court. Plaintiffs replied to the answer, and afterwards, with the leave of the court and against the defendant's objection, filed a second amended petition. Issue was joined, and the case was tried by a jury, resulting in a verdict for the plaintiffs for the full amount claimed by them, upon which judgment was rendered. A motion for a new trial having been overruled, this writ of error was thereupon sued out.

The first assignment of error, namely, that the court erred in allowing the second amended petition to be filed, has been so frequently considered and declared unfounded by this court that it may be dismissed with the remark that amendments are discretionary with the court below, and not reviewable here. See the opinion of the court in the case of *Chapman* v. *Barney*, 129 U. S. 667, decided March 5, 1889, and the authorities there cited. The same remark applies to the assignment that the court erred in overruling a motion for a new trial. *Arkansas Valley Co.* v. *Mann*, *ante*, 69, decided March 5, 1889, and the cases there cited.

146 OCTOBER TERM, 1888.

The leading assignments of error substantially present but one proposition, to wit : Conceding that the county had the power to build the bridge, (as was determined by this court on the former writ of error,) the averments of the plaintiff's petitions were not sustained by the evidence adduced at the trial, and the contract sued on was not made by the county in the mode provided by law.

The statute law of Kentucky applicable to such contracts made by a county is found in Art. 17, § 1,[1] c. 28, of the General Statutes of that State (Frankfort, 1873): —

§ 5. " The county court is a court of record." (Page 307.)

§ 9. " The records of the county court shall at all times show by whom the court is holden. When the justices of the peace compose a part of the court the records must state the names of those who take their seats, and when a member leaves the bench his absence must be noted."

§ 1, Art. 3, c. 27. " The county court, except for the county of Jefferson, unless composed of a majority of the justices of the peace of said county in commission, shall not have power to make appropriation of the county revenue or levy, or to make any charge thereon greater than fifty dollars for any one object."

It is contended that the contract sued on was not made in conformity with those requirements; that it was neither made, nor authorized by the County Court, composed of the county judge and a majority of the justices of the peace of the county ; and that there is no record of the County Court so constituted, showing that the contract was, as a matter of fact, authorized to be made.

In order to test the soundness of this position, it is necessary to consider the entire record taken together. In the first place,

---

[1] § 1. The county judge in each county shall hold the County Court on the days prescribed by law; but at the Court of Claims, which shall be held once in each year, the justices of the peace of the county shall be associated with him and constitute the court; a majority of whom shall constitute a quorum for the transaction of business; which shall be confined to laying the county levy, appropriating money, and transacting other financial business of the county.

it cannot be denied, indeed the plaintiff in error concedes, that there are a number of orders which, even *quoad hoc*, come up to the requirements of " orders of record," and " of the court properly constituted," having been made when a majority of the justices were present.

Among these are—.

*First.* The order of June 18, 1877. This order recognized Ridgway as commissioner; it adjudicated the necessity of erecting the bridge; it adopted the Brawner site for that bridge; and it appointed Ridgway a commissioner to confer with a commissioner from Jefferson County concerning plans and specifications and cost.

*Second.* The order of July 16, 1877. This order appropriated $600 for the building of the bridge at the Brawner site; it directed the commissioner to report plans and specifications, and the bids made; it authorized the county judge (W. Carpenter) to receive bids and to accept or reject the same as he might think proper, looking to the interest of the two counties.

*Third.* The second order of November 19, 1877, which appropriated $600 for the bridge.

*Fourth.* The order of November 18, 1878. This order showed a levy of a tax on the taxable property of the county for the purpose of paying for the bridge; a recognition of Washer as contractor for building the bridge, and of Danenhauer and Baecker as his assignees; and an allowance to them, as such assignees, in part payment of the bridge.

*Fifth.* The order of November 18, 1879. This order appointed a committee to examine the work on the bridge, and to report.

*Sixth.* The order of January 19, 1880. This order confirmed the committee's report, and discharged the committee.

Such is that portion of the record which is admitted to be the record of the court " properly constituted." It is claimed that the record is defective in the following particulars:

It gave neither the judge nor the commissioner power to contract; although it is conceded that the power was given to the county judge to accept bids. The alleged contract does not appear to have been reported to the court; nor was there .

any note of record that it was made by Ridgway; nor was the contract ever filed; nor does it show that the county judge accepted it. And lastly, while the record shows a knowledge of the fact that a contract existed, and was with the defendants in error, yet it does not show a knowledge of the fact that the contract assumed to bind Bullitt County for the whole cost.

Now, inasmuch as the record does show affirmatively an adjudication of the necessity of the contract; an appropriation for the preliminary work; the appointment of an agent (Carpenter) to make the contract; and a recognition of the contract by directing the levy of taxes to pay the contractor and his assignees for the work done; we do not think it necessary, in order to fix a liability upon the county, that the record should also show, affirmatively, the existence of those outside incidents which, as enumerated, it does not set out.

The case of *Mercer County Court* v. *Kentucky River Navigation Co.*, and *Garrard County Court* v. *Same*, 8 Bush, 300, much relied on and quoted from by counsel for plaintiff in error, is, as a brief analysis will show, inapplicable to the controversy in the present case.

An act of the Kentucky legislature, passed in 1865, to incorporate the Kentucky River Navigation Company, provided in one of its sections: "that the county courts of the several counties bordering on the Kentucky River, . . . may on the application of the corporation named, . . . a majority of all the justices of the peace being present, subscribe stock in said company, and levy a tax on all taxable property of said county sufficient to pay the whole amount of said subscription in three years from the time it was made, which tax shall be collected in all respects as taxes for state revenue are now collected." The Mercer County Court, a majority of the justices being present, made an order "that the sum of seventy-five thousand dollars be directed to be subscribed," and appointed one Joseph A. Thompson, a commissioner to subscribe the same in the Kentucky River Navigation Company. The Garrard County Court in like manner made an order that the sum of one hundred thousand dollars should be subscribed on the part of Garrard County, and also appointed an agent

to subscribe the same in said company. In pursuance of said orders the subscriptions were made by the persons appointed, on the books of the company, for and on behalf of each of said counties by its agent. The court held that the above orders and subscriptions were not binding, and did not amount to contracts of subscription, because the County Court had no authority under the statute to appoint a commissioner or agent to make the subscription.

The decision was simply that, where the County Court, assuming to act under a special statute, whereby was delegated to that court the extraordinary power of determining whether a county should subscribe in aid of the Navigation Company, and of making such subscription, undertook to appoint an agent to make the subscription, such appointment was void as being unauthorized by law. The whole question was, as to the power to appoint the agent; and the court held that, as no such power to appoint existed, the court could not bind the county, except by an order which itself amounted to a subscription, and which must be made, as evidenced by the record alone, when a majority of the justices were present. The court, however, clearly recognized the principle that it was legally possible to imply a subscription from the subsequent adoption and ratification by a full court of the act of Thompson.

Now, in the case at bar, the power to appoint an agent or commissioner is undeniable, and is not challenged. On the contrary, it is admitted. So also is it shown that the agent (Carpenter) was appointed. And, as we have seen, one of the orders of the court imports upon its face a knowledge of the contract made by its commissioner, and amounts to a ratification of such contract.

The well-settled maxim that a court of record can act only through its orders made of record, when applied to judicial proceedings, means that where the court must itself act, and act directly, that action must always be evidenced by the record. But in this instance, where a body has large administrative and executive powers, and is by law authorized to appoint agents, the principle cannot be so extended as to mean that all the acts of its agents shall appear of record.

The County Court of Kentucky is, by the statute of that State, constituted the executive body of the county, and invested with the important and usual powers of a county to keep in repair public buildings, bridges, and other structures, and to superintend the same; over highways and ferries, provision for the maintenance of the poor, the laying and collecting of taxes, the appropriation of the county revenue, the appointment of many county officers, and to manage all the fiscal affairs of the county, with many other powers, not less important, appertaining to the administration of county government. The sole fact that its proceedings as a court of law are of record, cannot, in our opinion, deprive it of the power to appoint, by record, agents to make contracts, and to transact business not of record.

With regard to the contention that the commissioner exceeded the authority given by binding Bullitt County to pay for the entire work, an examination of the county record shows that whilst the court sought to secure joint action with Jefferson County in building the bridge, it determined to proceed without that county, if necessary. Especially is this shown by the order of July 16, 1877, authorizing Carpenter alone to accept bids without the coöperation of Jefferson County.

But this point is disposed of by this court in its decision on the demurrer above mentioned: " Nothing further," say the court, " could be done under §§ 36 and 37. Bullitt County, therefore, fell back upon the power conferred by § 1, of article 16, c. 28, *and made a contract by which it became responsible for the entire cost of the bridge.* Its power to do this, we think, was clear." 110 U. S. 566, 567.

It is contended that the court erred in admitting, as evidence of the breach of the contract by Bullitt County, the letter of the presiding judge of the County Court to Washer notifying him to stop all work upon the bridge immediately, or that proper proceedings would be instituted to stop the same.

The ground upon which this objection rests is, that the power to direct the contractor to discontinue the work resided only in the County Court, composed of the county judge and a

majority of the justices, and that the court so composed could authorize such notice only by an order to that effect entered of record.

We do not concur in the proposition that such action of the County Court, evidenced by its record, was necessary to authorize the presiding judge to direct the contractor to stop the work. When that court, constituted as the law requires for such purpose, and in the manner prescribed, entered into the contract sued on, and charged the county with the amount specified therein, its jurisdiction in that special mode of organization extended no farther. It then became the legitimate province of the County Court, held by the county judge alone, to superintend and control the erection of the structure. According to the settled course of decisions in the highest court of Kentucky, the justices of the peace do not form a necessary part of the County Court, except when sitting as a court of claims, or when engaged in appropriating the revenues of the county, levying taxes, laying charges upon the county, submitting questions of taxation to a popular vote, and making subscription to stock in railroads. Upon no other occasion, and with reference to no other matters, is the concurrence of the justices of the peace necessary. Gen. Stat. Ky. 273, c. 27, art. 3, § 1; Id. 306, c. 28, art. 17, §§ 1 and 2. All the powers of the court, which do not come within these enumerated exceptions, are exercised exclusively by the County Court, presided over by the county judge alone. Gen. Stat. Ky. 304 to 307, inclusive. And, as a general rule, when any power is conferred or duty imposed by statute upon the County Court, the term is understood to mean a court held by the presiding judge alone, and not in conjunction with the justices, and should be held so to mean even when used in connection with fiscal matters, if it relates to mere ministerial duties. *Bowling Green & Madisonville Railroad* v. *Warren County*, 10 Bush, 711; *Meriwether* v. *Muhlenburg County Court*, 120 U. S. 354, 357, and cases there cited.

When, therefore, Washer received the formal and official notice to stop work, signed by the judge of the County Court and the county attorney, he was not bound before obeying it,

to examine the records of that court to ascertain whether it was authorized by an order made by the judge in conjunction with the justices and duly entered of record; but he was justified in stopping immediately, as directed, and in resorting to his action upon the contract. We are of opinion that no principle of law or of fair dealing is violated by holding a municipal corporation to a contract thus made within its lawful powers and by its lawfully constituted authority. For these reasons the judgment of the Circuit Court is

*Affirmed.*