In the Matter of Charles LaMARRE, Respondent-Appellant.

No. 73–1510.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1973.

Decided April 3, 1974.

Weick, Circuit Judge, concurred in part and dissented in part and filed an opinion.

---

Richard A. Harvey, Detroit, Mich., on brief, for respondent-appellant.

Ralph B. Guy, Jr., U. S. Atty., Fred M. Mester, Asst. U. S. Atty., Chief, Civ. Div., Detroit, Mich., on brief, for appellee: The Hon. John Feikens.

Before WEICK, EDWARDS and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant LaMarre appeals from a judgment finding him in contempt of court and imposing a $100 fine under 18 U.S.C. § 401(3) (1970). The finding and sentence were entered by a District Judge in the United States District Court for the Eastern District of Michigan, Southern Division, after a citation for contempt and a full hearing.

The facts which triggered this controversy, with two exceptions which we have italicized, are undisputed and we recite them from the Memorandum Opinion of the District Judge:

The events leading to this result are as follows: The case of Audrey Frazier, et al. v. Travelodge International, et al., Civil Action No. 36641, was set

for trial before this court. Insurance Company of North America was the insurer of defendant Travelodge, and thus had a right to and was obligated to provide the defense in that case. Respondent herein, LaMarre, was a claims manager for INA, and had principal charge of the defense of the case for INA and Travelodge. For this purpose, respondent retained the law firm of Harvey, Kruse and Westen of this city to defend the suit.

At the time that the trial of the case was ready to commence, it appeared that counsel for both plaintiffs and defendants were agreed on a settlement figure. A phone call was thereupon made to Mr. LaMarre by INA's counsel, and it was indicated to the court and counsel that Mr. LaMarre would not accept the recommendation of his counsel. Since counsel for INA and personal counsel for one of the defendants nonetheless thought the settlement figure acceptable, the court requested that Mr. LaMarre attend the conference and so indicated to INA's counsel. A phone call was made, and Mr. LaMarre indicated through his counsel that he refused to attend the conference. The Court thereupon indicated it would recess the matter for approximately one hour and indicated to INA's counsel that Mr. LaMarre should come to its chambers from his office (about two blocks away) at 11:30 a. m. Thereupon, INA's counsel, Mr. Milan, was joined by his senior partners, Messrs. Harvey and Kruse, who advised the court that Mr. LaMarre would not attend the conference; hence the second request was refused. *The court thereupon ordered INA's counsel to advise Mr. LaMarre that the court required his appearance at 2:00 p. m. of the same day in the courtroom and that failure on his part to appear could lead to sanctions.* At 2:00 p. m. on February 22, 1973, the court was notified by INA's counsel that Mr. LaMarre refused to appear. His counsel indicated, in open court, that they had

notified him of the court's order and that they had not counseled him to refuse to comply with the court's order. *Again the court deferred, and during the afternoon of that day the court notified Mr. LaMarre through his counsel that he was ordered to attend a hearing in court to answer why he refused to comply with the court's order.* That hearing was set for February 23, at 9:00 a. m. Again at that time Mr. LaMarre, for the fourth time, refused to comply. The court in open court both on the previous day and on February 23 in the presence of INA's counsel made a complete record of these proceedings. Having dictated an order on the record and then to the court's secretary, the Marshal was ordered to proceed to Mr. LaMarre's office and to compel his appearance in court.

Mr. LaMarre was thereupon brought to court, and the court, orally, and in open court, gave him notice of the charge and the essential facts constituting the contempt charged. He was accompanied by Richard Harvey, Esq. A hearing date (several weeks later) was also set which allowed him reasonable time to prepare a defense and he was admitted to bail in the form of a personal bond. This procedure was in accord with Rule 42(b) of the Federal Rules of Criminal Procedure.

In the two italicized sentences the District Judge uses the words "required" and "ordered" when speaking of LaMarre's appearance. These words doubtless represent the Judge's intent. Actually, as far as the appellate record is concerned, he never employed either word until after LaMarre's arrest. The word he did use repeatedly was the more polite (but much less definite) word "request." (See Appendix.)

█ Preliminarily we answer several of appellant's questions because of the probability of their reoccurrence. Appellant claims that the District Judge should have disqualified himself and referred this contempt charge for hearing

before another judge. Under Rule 42(b) of the Federal Rules of Criminal Procedure, if the contempt charge involves disrespect toward or criticism of the judge, that judge is, of course, required to disqualify himself from the hearing of the contempt. This record demonstrates no such disrespect or criticism. The District Judge was correct in refusing to disqualify himself.

■ Appellant also disputes the authority of the District Judge to compel LaMarre's appearance. Although the "order" involved appears to us to present a question of first impression, we believe it was well within the judicial power. Pretrial proceedings, whether for preparation for trial or for settlement conferences, are an integral and vital part of the judicial process. Rules of court guide and control pretrial. Fed.R.Civ.P. 16; Handbook for Effective Pretrial Procedure, adopted by the Judicial Conference of the United States (1964), 37 F.R.D. 255. We perceive no grounds for denying the trial judge the power to require attendance of any party to the case at any session of the court where the judge deems his presence to be necessary. We believe the District Judge was correct in holding that LaMarre was a party to the proceeding before the court. The Insurance Company of North America was by contract required to defend and to pay the damages, if any, assessed within its policy limits in the District Court suit entitled Frazier, et al. v. Travelodge International, et al., Civil Action No. 36641. While Michigan law, Mich. Comp.Laws Ann. § 500.3030 (1967); Pitcairn v. Rumsey, 32 F.Supp. 146 (W. D.Mich.1940), prohibits the naming of any insurance company as a party defendant, the reality of the matter is that INA had retained counsel, was prepared to defend the suit, and was in complete control of settlement negotiations. Further, it is undisputed that Charles LaMarre was the resident agent of INA in charge of the case.

■ In short, we have no doubt that the District Judge had the right and the power to issue an order to Mr. LaMarre to attend a pretrial session of the court and, on refusal, to enforce said order by contempt proceedings. Mr. LaMarre's expressed determination not to accept the recommendation of his own counsel and settle the underlying case could have been reiterated in the conference. It is, of course, clear that on due process grounds, no judge can compel a settlement prior to trial on terms which one or both parties find completely unacceptable. But LaMarre could not, in our judgment, refuse a lawful order to attend such a conference to discuss the matter.

■ Finally, we find no merit to appellant's contention that the judgment should be reversed because of the asserted unlawfulness of LaMarre's arrest. The order for LaMarre's arrest, based on ample probable cause, was entered on the record in open court. Its lawfulness was not defeated by the fact that the Marshal did not have a copy of it in hand.

This reasoning had led a majority of this court to the verge of affirmance of the contempt judgment. LaMarre's protestations that he considered the Judge's requirement of his attendance at the repeatedly adjourned settlement conference to be merely a request rather than an order was counterbalanced by his own attorney's affidavit that he (the attorney) had received the "order" from the District Judge and had told LaMarre that he (LaMarre) was "ordered" to attend. On searching this record for the order, however, we have been unable to find it.

In the record references of court sessions on February 22, 1973, (the day before the District Judge ordered LaMarre's arrest) the District Judge had repeatedly phrased his desire to have LaMarre appear in terms of a "request." As a matter of courtesy, we believe LaMarre should have honored the request. It was certainly not an onerous one.

Further, we think it highly probable that in a telephone call in the afternoon

of February 22, the District Judge *ordered* attorney Milan to tell LaMarre that the District Judge had *ordered* LaMarre to appear at 9 a. m. on February 23, and that Milan did so. Both the deposition of Milan and the District Judge's subsequent statements reflect that at this point the District Judge ceased to "request." There, is however, no record of this "order" to be found in this appellate record.

The judicial power to punish for contempt is an awesome power. *See* Green v. United States, 356 U.S. 165, 193, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958) (Black, J., dissenting). Because of the potential for abuse, contempt power has been defined by federal statute and circumscribed by case law.

The applicable statute provides:

### § 401. *Power of court*

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of *its* authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. June 25, 1948, c. 645, 62 Stat. 701. 18 U.S.C. § 401 (1970).

The applicable section is, of course, subsection (3). Concerning this, this court has said:

Sec. 401(3), Title 18, U.S.Code, plainly limits the power of this court to a case of disobedience or resistance to its "order, rule, decree, or command." This necessarily means an existing order, rule, decree, or command. Acts of a respondent *prior* to the entry of the order or judgment which he is charged with disobeying, do not constitute contempt of court, regardless of the intentions of the respondent to avoid the impact of an order

or judgment expected by him to be thereafter entered. Berry v. Midtown Service Corp., 2 Cir., 104 F.2d 107, 122 A.L.R. 1341, certiorari dismissed 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525; Ex parte Buskirk, 4 Cir., 72 F. 14, 20; In re Sixth & Wisconsin Tower, 7 Cir., 108 F.2d 538; Parker v. United States, 1 Cir., 126 F.2d 370, 380. NLRB v. Deena Artware, Inc., 261 F.2d 503 (6th Cir.), rev'd on other grounds, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1958).

In one of the cases relied on in *Deena Artware,* the Fourth Circuit said:

Testing the record of this case in the court below by the rules so established, it will be found that said court had no jurisdiction of the proceeding against Buskirk for contempt. At the time the same was instituted there had not been issued by the court any writ, process, order, rule, decree, or command in the said chancery cause of King v. Buskirk and Mullins, to which the petitioner had or could have shown any disobedience or resistance whatever, as the record clearly shows. Indeed, the charge as first made seems to recognize this as true, and the affidavit first filed and the order first entered sets up the violation of a "stipulation" made in open court as the foundation of the proceedings for contempt. However, reprehensible such conduct on the part of Buskirk may have been,—proceeding upon the theory that the charge was true, which he, however, denied in his answer,—it nevertheless did not constitute a contempt to the court or its orders, and did not authorize any proceedings for a contempt under the provisions of the law as it then existed. A careful examination of the record shows that Buskirk had not been ordered to do or decreed not to do any act or thing in said chancery suit prior to the time he was proceeded against, fined, and committed for contempt. Such being the case, the court had no jurisdiction of said contempt proceedings, and the rule should

not have been granted. The court below, it is proper to say, acted upon the theory that the order made by it on the 28th day of June, 1895,—in which it is recited that the court, on the 3d day of June, 1895, directed that in substance a restraining order issue as prayed for by the plaintiff, but which order in fact was not entered, not even prepared,—had the effect, as a nunc pro tunc order, to make valid and binding on the defendants that which the court had intended to do or had ordered done on said 3d day of June. In this, we think, the court below was in error. The rule is now well established that nunc pro tunc orders cannot operate to modify orders theretofore made or to take the place of orders intended to be made but omitted. The courts can by such orders supply omissions in the record of what was actually done in the cause at a former time when it was under consideration, and by mistake or neglect not entered in the clerk's minutes or the court's records; but where the court has omitted to make an order which it could have made, and in fact intended to make, it cannot subsequently make the same nunc pro tunc, so as to make it binding upon the parties to the suit from the date when it was so intended to have been entered; and especially is this so in matters relating to criminal proceedings and those involving rules for contempt. Hyde v. Curling, 10 Mo. 359; State v. Clark, 18 Mo. 432; 1 Bish.Cr.Proc. § 1160; Bank v. Dudley, 2 Pet. [492] 522 [7 L.Ed. 496]; In re Wight, 134 U.S. 136, 10 S.Ct. 487 [33 L.Ed. 885]; Bullitt Co. v. Washer, 130 U.S. 142, 9 S.Ct. 499 [32 L.Ed. 885]; Brignardello v. Gray, 1 Wall. 627 [17 L.Ed. 693]; Nabers v. Meredith, 67 Ala. 333; In re Limerick, 18 Me. 183; Smith v. Hood, 25 Pa. St. 218. Ex parte Buskirk, 72 F. 14, 20–21 (4th Cir. 1896).

The holding in still another of the cases relied on in *Deena Artware* is stated thus:

Despite our respect for the views of Judge Van Fleet, we are unable to agree with his opinion that a stay directed to one party can be expanded by implication into an order upon the other. The authorities he cites do not extend so far. Before a person should be subject to punishment for violating a command of the court, the order should inform him in definite terms as to the duties thereby imposed upon him. Once we adopt the principle that an express order to one party carries implications of duties imposed upon the other, it would be difficult to set limits upon the doctrine. We believe it is a wiser policy to punish as contempt only the disobedience of some express command; and such we understand to be the general rule. Berry v. Midtown Service Corp., 104 F.2d 107, 111 (2d Cir. 1939).

*See also* NLRB v. Express Publishing Co., 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930 (1941); In re Brown, 147 U.S.App.D.C. 156, 454 F.2d 999, 1008 n.49 (1971); McFarland v. United States, 295 F. 648 (7th Cir. 1923).

■ These cases hold or imply that for an "order" or "command" to be enforced by criminal contempt proceedings, it must be clear and definite and "entered" upon the record or records of the court. These standards strongly suggest that such order be permanently preserved for review. This normally means a written order issued by the court and personally served upon the alleged contemner. Such an order, however, may likewise be enforcible if entered in open court in the presence of the person concerned or with his knowledge clearly proved. *See* Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958).

■ To recapitulate, we believe that it goes without saying that the preceding "requests" of the District Judge which were entered on the court record, no matter how appropriate they may have been, were not orders which served to put LaMarre on notice that his free-

dom was in jeopardy if he failed to comply. This was knowledge that he was entitled to have.

■ We hold that under the circumstances of the instant case [1] the judicial instruction of February 22 at 3:15 p. m. which was oral in nature and was transmitted by telephone to be relayed to LaMarre by word of mouth, and which instruction was never entered upon the record of the court, was not an enforcible "order" or "command" within the meaning of 18 U.S.C. § 401(3) (1970).

The judgment of the District Court is reversed.

### APPENDIX

THE COURT: . . . .

I asked Mr. Milan what the situation was with regard to Mr. Lamarr [*] because I had been led to believe that even though Mr. Milan and Mr. Speer had recommended $10,000 for settlement of each of the cases, for a total of $20,000, that Mr. Lamarr would not agree to that, and would not follow the recommendation of the officers of the Court who were before me as counsel.

I asked Mr. Lamarr to appear so that this could be discussed in pretrial conference. He did not do so.

I again renewed my request that he appear, and as far as I know, he is not here.

Is that correct?

MR. MILAN: That is correct, Your Honor.

THE COURT: And he refuses to attend this Court; is that correct?

MR. MILAN: That is correct, Your Honor.

THE COURT: He has been advised by his counsel of the request of the Court.

MR. MILAN: Your Honor, Mr. Lamarr—that the Court had ordered myself, John Milan, to produce Mr. Lamarr in this courtroom.

THE COURT: What do you mean by that?

MR. MILAN: Your Honor, I understood your statement in Chambers to the effect that you were ordering me to produce Mr. Lamarr.

THE COURT: Well, I am not going to quibble on words. What I wanted was to have Mr. Lamarr present.

MR. MILAN: Yes.

THE COURT: And he refuses to answer that request of the Court?

MR. MILAN: That is also correct.

THE COURT: Now, I believe that since this case is a matter of public concern, all cases that are involved in the courthouse are in such a capacity, that this matter of the refusal of a representative of the insurance company to attend a pretrial conference ought to be dealt with by this Court.

But before I do so, I have in mind bringing this up before the entire Bench so that I can consult with my colleagues as to the proper course to take in that regard.

Now, I take it that there is no change, Mr. Milan, of offer for $10,000 for each of the cases?

MR. MILAN: That is correct, Your Honor.

THE COURT: All right; the case will proceed. The panel is in the next room, and I ask that they be brought in here.

I take it you are ready to proceed?

You are ready to proceed, Mr. Deeb?

Are you representing the defendant, Mr. Kruse?

MR. KRUSE: Your Honor, it was my understanding that the Court requested that because of Mr. Lamarr's refusal,

---

[1]. We recognize that there may be cases where emergency circumstances may justify variation from the formal requirements imposed in this case.

[*] Throughout the transcript Mr. LaMarre's name is incorrectly spelled.

that I come over to court, and both Mr. Harvey and I, considering the importance of this matter, did attend this morning and discuss the case briefly with you—

THE COURT: And do you, Mr. Harvey, also concur in the statement or the attitude that Mr. Lamarr has taken, not responding to the request of the Court that he attend the pre-trial conference?

MR. HARVEY: No—

THE COURT: I'm asking you now.

MR. KRUSE: This was scheduled for trial this morning. I concur that Mr. LaMarr has declined the Court's request to appear before the Court.

THE COURT: Did you counsel him not to appear?

MR. KRUSE: No, I did not.

THE COURT: Did you, Mr. Harvey?

MR. HARVEY: No, I did not.

THE COURT: He is making this judgment on his own?

MR. HARVEY: Yes, Your Honor.

THE COURT: Now, Mr. Deeb.

MR. DEEB: Your Honor, because of what I consider to be the drastic change in the circumstances in this matter, I certainly at this point do not feel that the plaintiffs are ready to proceed, for the simple reason that we would like to have time at this point to check out the law relative to having this case voluntarily dismissed in the Federal Court, and the possibility of having it reinstituted in the State Courts.

My reasons for this are several in number: I question at this point whether or not to proceed immediately to trial will in fact fully protect the rights of my clients. We have been under the assumption, since approximately a quarter to twelve, that this case was in fact going to be settled for the sum of $10,000 for each plaintiff.

And as a result—

THE COURT: I don't think you can quite accurately say that because at no time has counsel for the defendant said that this would be done.

MR. DEEB: Well, it was indicated to me, Your Honor, by counsel for the defendant, that the figure of $10,000 was just brought to him. He was under the impression that $15,000 was the figure, and the figure of $10,000 was just brought to him.

And, as a result, it was his feeling that that figure would be accepted.

THE COURT: Well, you have heard both in chambers and on this record, which is in the nature of a special record for the purpose of protecting the rights of all of the parties, that even though Mr. Milan recommended $10,000 be paid each of your clients, for a total of $20,000, the insurance company claims manager, who refuses to obey a request of this Court, also said that he does not want to pay that amount.

MR. DEEB: I certainly appreciate that fact, Your Honor; but at the same time, I do not feel, because of what has transpired here today, that the plaintiffs are ready to proceed to trial at this time.

The plaintiffs would like to have an opportunity to check the law.

THE COURT: Well, let me ask you: Has the Statute of Limitations run in this case?

MR. DEEB: No, it has not, Your Honor.

THE COURT: Is it your desire to begin again in the State Court?

MR. DEEB: Your Honor, it's the plaintiffs' feeling at this point that they might not be able to get the type of trial that they desire here in the Federal Court because of the nature of the negotiations that were conducted today; because of the fact that they were led to believe that this case would be settled for a certain sum.

The attorney strongly recommended the figure to them of $10,000 for each plaintiff. It was his feeling that it would be in their best interest to accept that sum; and now that the plaintiffs

are told that they will not be able to receive this sum in settlement, they question the fact at this point of whether or not they should proceed in the Federal Court, and they are wondering whether or not they may be able to proceed, start their case over again and go in the State Courts where they feel they may be, more fully be able to protect their rights.

THE COURT: Do you have any objection to that, Mr. Milan?

MR. MILAN: Yes, Your Honor.

The defendants vehemently oppose the motion. The record for this case shows the case was instituted June of 1971, over a year and a half ago. It has run since that time, and the plaintiff has had more than ample opportunity to move the action from a Federal jurisdiction to a State jurisdiction.

This has not been done, and at this time, we claim on this record that the defendants will be prejudiced in the defense of this action if this matter does not immediately proceed to trial before this Court on this date when it is scheduled.

THE COURT: I find that very difficult to follow, in view of the fact that your real client, the Insurance Company of North America, and its claims manager, doesn't even want to acknowledge the request of this Court to come to a pretrial conference.

I'll do this, Mr. Deeb:

I'll give you until nine o'clock tomorrow morning. This matter will be adjoined until nine o'clock. All parties are instructed to be here at that time.

You may make your motion and I will rule on it at that time.

MR. DEEB: Thank you, Your Honor.

WEICK, Circuit Judge (concurring in part and dissenting in part).

I agree with the majority that the contempt charge did not involve disrespect of the Judge, and the Judge therefore was not required under Rule 42(b) of the Federal Rules of Criminal Procedure to disqualify himself.

I further agree that the District Judge had jurisdiction, power and authority to compel the supervisor of claims of the insurer, who was in charge of the handling of the case, to appear in Court to attend a pretrial conference. The insurer was the real party in interest and the Court ought not be required at pretrial to deal only with lawyers who had no authority except to try the case.

I further agree that LaMarre's arrest was lawful.

I part company with my colleagues only in their holdings that the Judge did not issue a definite order or command, and that such order had to be in writing.

The two orders to appear in court at a specified time were certainly as definite as they could be made. Both orders were made part of the record in the case. In my opinion it was not necessary for the orders, made upon a party in open court, to be in writing. Many orders are made every day by Judges in open court, or in pretrial conferences, which are not in writing.

None of the cases cited by the majority supports their thesis, either expressly or by implication.

The majority opinion graphically portrays on pages 2 and 3 the painstaking efforts of the Judge and his infinite patience in his attempt to secure LaMarre's attendance at the pretrial conference. Initially the Judge made only requests for LaMarre to attend; when these requests were repeatedly disobeyed, the Judge then ordered him, on two different occasions, to attend. LaMarre for the fourth time declined to attend. He was given notice of the orders of the Court by his own attorney, Milan, who filed an affidavit so stating.

The conduct of LaMarre was a flagrant violation of the orders of the Court and was contumacious.

We ought not to impair the power and authority of a Judge to conduct efficiently a pretrial conference or a trial.

I would affirm the judgment of conviction for contempt.