842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Leo MINARIK, Defendant-Appellant.
 No. 87-5752.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1988.
 
 Before ENGEL, MERRITT and CORNELIA G. KENNEDY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Robert Minarik appeals from the judgment of the District Court finding him guilty of criminal contempt pursuant to 18 U.S.C. Sec. 401.[1] On appeal the defendant argues that the District Court did not have jurisdiction of the subject matter of the case and that the evidence was not sufficient to support the verdict. For the reasons set forth below, we reverse.
 
 
 2
 A jury convicted the defendant of conspiring to defraud the Internal Revenue Service by impeding its efforts to collect taxes due and owing. When dismissing the jury, the District Court made the following statement in open court:
 
 
 3
 All right, ladies and gentlemen, at this time you will be excused and discharged and relieved of any further responsibility in this case. You have ended your duties with regard to the decision of this case at this time, this point.
 
 
 4
 Let me advise you that before you leave, this may be a question that has occurred to some of you and I'll go ahead and answer it. Those of you who have not served previously on a jury, under the rules of the Court no one connected with this litigation can approach you and ask you any questions concerning your deliberations in this case, or any questions at all, top, side or bottom, without first obtaining permission of the Court, and that includes the lawyers, parties, anyone acting on their behalf, or at their instance, directly or indirectly.
 
 
 5
 Now, if the Court determines that any interviews should take place or any question be put to you about this matter, you will be the first to know, because I will enter an order and direct the Clerk to send it to you. So you will know by virtue of entry of an order that the Court has authorized anyone connected with this litigation to approach you and ask you anything.
 
 
 6
 So I advise you of that. You probably are not aware of the rule of Court concerning that.
 
 
 7
 Joint Appendix at 32-33 (emphasis added). Jurors testified that the defendant was in the courtroom at the time the court made this statement and that the statement could be heard throughout the courtroom. Id. Indeed, the defendant conceded that he had heard the statement. The jurors also testified that they had received the following letter from the defendant two weeks after the trial:
 
 
 8
 Dear Juror,
 
 
 9
 Hello--It has been two weeks since you returned a verdict of guilty in the case of U.S. v. Robert Minarik and Aline Merkel Campbell.
 
 
 10
 I assume you have had time to reflect upon the reasons for your verdict. In my closing statement to you, I asked the question, "Where is the crime?" To this date I still have not been able to learn what crime I am guilty of committing.
 
 
 11
 For this reason, I am asking if you would voluntarily explain to me on what basis you reached a guilty verdict.
 
 
 12
 I think you should know that Aline and I, through Mr. Cohan and Mr. Dawson, are formally requesting the court for a Judgment of Acquittal Notwithstanding the Verdict. As these motions are a matter of public record, I am enclosing them for your information.
 
 
 13
 If the court denies these motions, sentencing will take place at the Federal District Courthouse before Judge Higgins on December 22 at 1:00 PM in Courtroom No. A-859. The maximum penalty for this felony conviction is five years in prison and a $250,000.00 fine. I personally invite you to attend and witness the final outcome of your verdict.
 
 
 14
 I am also including a self-addressed stamped envelope for your use if you care to respond to my question. As you can see from reading the enclosed motions, the outcome of this case will seriously affect not just my liberty, but ultimately your own liberty as well. I sincerely hope you will respond, even anonymously if you like.
 
 
 15
 No matter what your response, I appreciate your willingness to serve on the jury and give consideration to this matter.
 
 
 16
 Sincerely,
 
 
 17
 /s/ Robert L. Minarik
 
 
 18
 Joint Appendix at 17. At the contempt trial the United States alleged that the letter violated both the order embodied in the court's statement to the jury and in Local Rules of Court 12(h) ("Rule 12(h)"), which reads as follows:
 
 
 19
 Post-Verdict Interrogation of Jurors.
 
 
 20
 No attorney, party, or representative of either may interrogate a juror after the verdict has been returned without prior approval of the Court. Approval of the Court shall be sought only by an application made by counsel orally in open court, or upon written motion which states the grounds and the purpose of the interrogation. If a post-verdict interrogation of one or more members of the jury should be approved, the scope of the interrogation and other appropriate limitations upon the interrogation will be determined by the Judge prior to the interrogation.
 
 
 21
 Joint Appendix at 36 (emphasis added). The District Court found the defendant guilty of criminal contempt. Defendant appeals.
 
 
 22
 The standard when reviewing a guilty verdict is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In re LaMarre, 494 F.2d 753, 758 (6th Cir.1974) stated that
 
 
 23
 for an "order" or "command" to be enforced by criminal contempt proceedings, it must be clear and definite and "entered" upon the record or records of the court. These standards strongly suggest that such order be permanently preserved for review. This normally means a written order issued by the court and personally served upon the alleged contemnor. Such an order, however, may likewise be enforcible [sic] if entered in open court in the presence of the person concerned or with his knowledge clearly proved.
 
 
 24
 See also United States v. Rylander, 714 F.2d 996, 1002 (9th Cir.1983), cert. denied, 467 U.S. 1209. Knowledge or actual notice of the court order in question and a willful disobedience of that order are essential elements of criminal contempt. Id. at 1003. The defendant contends that the evidence does not support a finding that there was a clear and definite court directive or order, that he knew the terms of Rule 12(h), or that he willfully violated a court order.
 
 
 25
 We agree with the defendant that the court's statement to the jury was not a court directive for the purposes of section 401(3) and thus cannot be the basis of a contempt conviction. It did not direct the defendant to do or refrain from doing anything. Furthermore, although the court's statement to the jurors might have been sufficient to alert defendant to the fact that there was a court rule, it did not order him to read the rule. Even if directed to defendant, we do not believe the court's statement was sufficiently clear that defendant could be found in contempt for writing the jurors. The District Court instructed the jury that "no one could approach [them] and ask [them] any questions."[2] Defendant said that he thought that meant he could not approach the jurors in person but did not prohibit him from writing to them. We cannot say that defendant's understanding of the word "approach" was unreasonable.
 
 
 26
 The defendant also argues that the District Court lacked jurisdiction to find him guilty of contempt for violating Rule 12(h) because Rule 12(h) does not fall within section 401(3)'s list of directives. We need not reach the issue of whether the word "rule" in the contempt statute means only a rule in the process sense such as a rule nisi or means court rules. There is simply no evidence that defendant was aware of the terms of the court rule. Unaware of its terms he could not have willfully disobeyed it. Consequently, the defendant's conviction of criminal contempt must be reversed.
 
 
 27
 Accordingly, we REVERSE the judgment of the District Court.
 
 
 
 [1]
 18 U.S.C. Sec. 401 states in pertinent part that "[a] court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as-- ... (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command."
 
 
 [2]
 We note that when the District Court found the defendant guilty of criminal contempt he was under the mistaken impression that he had told the jury that no one could "approach or ask [them] any questions" about the case. Joint Appendix at 51. If that had been what he had told the jury we might have reached a different conclusion